Kristyn Wong (346644)
kristyn.wong@kleinthomaslaw.com
**KLEIN THOMAS LEE & FRESARD**
1920 Main Street, Suite 230
Irvine, California 92614
Tel: (949) 676-4570

Thomas L. Azar, Jr. (admitted *Pro Hac Vice*)
tom.azar@kleinthomaslaw.com
Sarah K. Molina (admitted *Pro Hac Vice*)
sarah.molina@kleinthomaslaw.com
**KLEIN THOMAS LEE & FRESARD**
100 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Tel: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN BELTRAN, PAUL GIOFFRE and TERRY DEAN MYERS, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US, LLC dba STELLANTIS NORTH AMERICA, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.: 3:26-cv-03899-RFL**<br><br>**FCA US LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION ON PLAINTIFF MYERS' CLAIMS, OR ALTERNATIVELY FOR ARBITRATION DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Action Filed: May 1, 2026<br><br>**DATE:** Tuesday, September 15, 2026<br>**TIME:** 10:00 a.m.<br>**JUDGE:** Hon. Rita F. Lin<br>**COURTROOM:** 15 |

/ / /

/ / /

/ / /

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, September 15, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 15, 18th Floor, of the above-captioned courthouse located at 450 Golden Gate Ave., San Francisco, California, Defendant FCA US LLC will and hereby does move this Court for an order compelling arbitration on the claims of Plaintiff Terry Dean Meyers under the Federal Arbitration Act, or alternatively order arbitration discovery.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

DATED: June 29, 2026

**KLEIN THOMAS LEE & FRESARD**

By: */s/ Kristyn Wong*
Thomas L. Azar, Jr.
Sarah K. Molina
Kristyn Wong

*Attorneys for Defendant FCA US LLC*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 1

II. ISSUES TO BE DECIDED ........ 2

III. BACKGROUND ........ 2

A. FCA US's Websites/Apps And Their Arbitration Agreements. ........ 2

B. Myers' Provision Of His Email Address In Arbitration Reveals Account Creation. ........ 7

C. FCA US's Inadvertent 7-Day Delay Paying JAMS' Fee. ........ 8

D. The Stay Of The (Still Pending) Arbitration. ........ 8

IV. LEGAL STANDARD ........ 9

IV. ARGUMENT ........ 10

A. The Court Should Compel Arbitration On Myers' Claims. ........ 10

B. The Late Payment Issue Will Not Allow Myers To Avoid Arbitration. ........ 11

C. Alternatively, Arbitration Discovery Should Be Ordered. ........ 12

V. CONCLUSION ........ 13

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*Alvarez v. T-Mobile USA, Inc.*,
822 F.Supp.2d 1081 (E.D. Cal. 2011) ..... 13

*Bracamontes v. United Rentals, Inc.*,
2024 WL 1884052 (E.D. Cal. Apr. 30, 2024) ..... 10

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ..... 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ..... 9

*Colon-Perez v. Sec. Indus. Specialists, Inc.*,
2026 WL 381127 (Cal. App. Feb. 11, 2026) ..... 12

*Espejo v. S. Cal. Permanente Med. Grp.*,
246 Cal.App.4th 1047 (2016) ..... 10

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) ..... 10

*Ghazizadeh v. Coursera, Inc.*,
737 F.Supp.3d 911 (N.D. Cal. 2024) ..... 11

*Gonzalez v. Peak Cal. Restaurant Grp., LLC*,
– F.Supp.3d – , 2026 WL 765325 (N.D. Cal. Mar. 18, 2026) ..... 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ..... 10

*Hohenshelt v. Superior Court*,
18 Cal.5th 310 (2025) ..... 2, 11, 12

*Hulsey v. Elsinore Parachute Ctr.*,
168 Cal.App.3d 333 (1985) ..... 10

*Johnson v. Walmart Inc.*,
57 F.4th 680-81 (9th Cir. 2023) ..... 9

*Kim v. Sun-Mar Health Care, Inc.*,
2026 Cal. Super. LEXIS 17901 (Cal. Super. Ct. Mar. 9, 2026) ..... 12

*Litton v. Roblox Corp.*, 2026 WL 1483493 (N.D. Cal. May 27, 2026) .......... 13

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .......... 10

*Reichert v. Rapid Inv., Inc.*, 56 F.4th 1220 (9th Cir. 2022) .......... 9

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) .......... 9

*Rios v. Cognizant Tech. Solutions U.S. Corp.*, 2025 WL 1684178 (E.D. Cal. June 16, 2025) .......... 10

*Tecero v. Sacramento Logistics LLC*, 2025 WL 43125 (E.D. Cal. Jan. 7, 2025) .......... 10

*Wilson v. Tap Worldwide, LLC*, 114 Cal.App.5th 1077 (2025) .......... 12

*Xtrasaver, Inc. v. Klipsch Grp., Inc.*, 2025 WL 3725695 (C.D. Cal. Dec. 5, 2025) .......... 11

**Statutes**

9 U.S.C. § 2 .......... 9

Cal. Civ. Code § 1633.7 (California's Uniform Electronic Transaction Act) .......... 10

Cal. Civ. Proc. Code § 1281.98 .......... 11

# TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Declaration of Thomas L. Azar, Jr. in Support of Motion to Compel Arbitration ("Azar Arb. Mtn. Decl.") |
| B | Declaration of Jillian Pascoe ("Pascoe Decl.") |
| C | Myers' Complaint And Demand For Arbitration |
| D | Arbitrator's Dec. 17, 2025 Order Staying Arbitration |
| E | Arbitrator's Aug. 20, 2025 Order After Conference Call |
| F | Aug. 27, 2025 Email from Madeleine Wykstra |
| G | Oct. 28, 2025 Email from Thomas L. Azar, Jr. |
| H | Sept. 19, 2025 Declaration of Thomas L. Azar, Jr. ("Azar Payment Decl.") |
| I | FCA US's Rule 13(b) Request That Arbitrator Impose Conditions On Claimant's Withdrawal From Arbitration ("FCA US's Rule 13(b) Request") |

## I. INTRODUCTION[1]

Plaintiff Terry Dean Myers asserts various claims against FCA US LLC based on his visits to FCA US's websites "on one or more occasions over the last four years."[2] Those websites and FCA US's mobile apps allow consumers to create an account in order to use certain features. To create an account, a consumer must enter their name and email address, create a password, and then affirmatively click a box confirming they "have read and agree" to the FCA Website Terms of Use – which includes an agreement to arbitrate all disputes.[3]

In May 2025, before filing this case, Myers filed an individual arbitration against FCA US with JAMS seeking a declaratory judgment that he was not required to arbitrate his website claims.[4] After Myers disclosed his email address during discovery, FCA US confirmed a person identifying himself as "Terry Myers" and providing Myers' email address had created an account on December 15, 2024 using one of FCA US's mobile apps.[5] When FCA US submitted evidence of Myers' agreement to arbitrate, he attempted to terminate the arbitration – arguing that a waiver issue (FCA US's inadvertent one-week delay in tendering a fee to JAMS) could only be decided by a California Superior Court. The arbitrator declined to dismiss the arbitration, but stayed the case "pending a relevant determination by the Superior Court" on the "late payment" issue.[6] The arbitration remains open to this day, with the parties submitting reports to the arbitrator every 90 days. But, Myers never filed the Superior Court action. Instead, he filed this putative class action.

Myers has not disputed he created an account, clicked a box, and agreed to arbitration in his complaint. And, there can be no dispute the scope of that agreement – which includes "any

---

[1]All exhibits to this motion are included with Exhibit A, Declaration of Thomas L. Azar, Jr. in Support of Motion to Compel Arbitration ("Azar Arb. Mtn. Decl."), filed herewith.

[2]Class Complaint ("Comp"), ECF #1, ¶ 119.

[3]Ex. B, Declaration of Jillian Pascoe ("Pascoe Decl."), ¶¶ 6-7, 9, 14.

[4]Ex. C, Myers' Complaint And Demand For Arbitration, ¶ 1.

[5]Ex. B, Pascoe Decl., ¶ 4; *see also* Ex. A, Azar Arb. Mtn. Decl., ¶¶ 2, 6.

[6]*See* Ex. D, Arbitrator's Dec. 17, 2025 Order Staying Arbitration.

disputes that may arise between You and FCA regarding the Sites" – covers Myers' website claims in this case.[7] Rather, the sole issue his counsel raised in seeking dismissal of the arbitration was the "late payment" waiver issue. But, the California Supreme Court confirmed in *Hohenshelt v. Superior Court*, 18 Cal.5th 310 (2025), that ***only*** a "willful, grossly negligent, or fraudulent" failure to pay arbitration fees can result in a waiver of the arbitration – and that payment delays due to "a good faith mistake, inadvertence, or other excusable neglect" cannot result in a waiver. *Id.* at 323. As FCA US's evidence shows, its one-week delay in sending one payment – which was remedied before Myers or his counsel even became aware of it – cannot support any waiver argument. *See, e.g.*, *id.*; *see also* § IV.B, *infra* (collecting additional cases).

Thus, this Court should compel arbitration on Myers' claims in this case. Alternatively, in the event the Court should conclude there is some factual dispute regarding contract formation, the Court should order a limited period of arbitration discovery so all issues can be presented to the Court on a complete evidentiary record.

## II. ISSUES TO BE DECIDED

1. Should the Court compel arbitration on Myers' claims?
2. Alternatively, should the Court order a limited period of arbitration discovery?

## III. BACKGROUND

### A. FCA US's Websites/Apps And Their Arbitration Agreements.

FCA US is an automaker that manufactures Dodge, Jeep, Chrysler, and other brand vehicles, and operates websites and makes available mobile apps for its vehicle brands. *See, e.g.*, Comp., ¶¶ 1, 35; *see also* Ex. B, Pascoe Decl., ¶ 3. In order to use certain features on its websites, or to utilize its mobile apps, a consumer must create an account. *See* Ex. B, Pascoe Decl., ¶ 3.

On FCA US's websites, consumers must enter their name, email address, and a password, and then affirmatively check a box next to the statement "I agree to the *Terms of Use* and acknowledge the *Privacy Policy*," hyperlinked to the FCA Website Terms of Use and Privacy

---

[7] *See* Ex. B, Pascoe Decl., ¶ 14; *see also id.* at Ex. A, ¶ 14.

Policy. *Id.* at ¶ 14. An example of how this appears is shown below (the red circle is added for clarity):




*Id.* Only after the consumer has affirmatively clicked the box confirming agreement does the "Create Account" button become active. *Id.*

On FCA US's mobile apps, account creation is similar. Again, the consumer must provide their name, email address, and password, at which point they are directed to the following screen:

[remainder of page left intentionally blank]



*Id.* at ¶¶ 5-6. All of the listed agreements are hyperlinked, and can be clicked, scrolled through, and viewed without proceeding with the account creation process. *Id.* at ¶¶ 7, 9. Only when the box confirming agreement is clicked by the user does the "Proceed" button become active. *Id.* at ¶ 7. Clicking on the "Website Terms of Use" link in the app opens the FCA Website Terms of Use as shown below:



11:38

Website Terms of Use

FCA WEBSITE TERMS OF USE
Last Updated: April 6, 2021
These FCA Website Terms of Use (the "Terms" or the "Agreement") apply to the use of FCA websites, including www.mopar.com, https://connect.jeep.com/us/en/login, www.driveuconnect.com, www.jeep.com, www.chrysler.com, www.fiatusa.com and any other FCA website, webpage or online service (including mobile application) that includes a link to these Terms, as well any information, content, services, Accounts (except as described below) or features FCA makes available to You through these websites (each a "Site" and collectively, the "Sites").

- "FCA," "We," "Us," and "Our," means FCA US LLC, and refers to FCA and its employees, directors, officers, contractors, subcontractors, consultants, representatives and agents.
- "You" and "Your" refers to the person who is accessing or using the Site.

PLEASE READ THESE TERMS CAREFULLY AS THEY CONTAIN IMPORTANT INFORMATION ABOUT LEGAL RIGHTS, REMEDIES AND OBLIGATIONS. BY ACCEPTING THESE TERMS AND/OR USING ANY OF THE SITES, YOU AGREE TO COMPLY WITH AND BE BOUND BY ALL OF THESE TERMS. IF YOU DO NOT ACCEPT ALL OF THE PROVISIONS OF THESE TERMS, YOU ARE NOT AUTHORIZED TO USE (AND MUST REFRAIN FROM USING) THE SITE.
NOTE: THESE TERMS CONTAIN A DISPUTE RESOLUTION AND ARBITRATION PROVISION (SECTION 13), INCLUDING CLASS ACTION WAIVER THAT AFFECTS YOUR RIGHTS UNDER THESE TERMS AND WITH RESPECT TO DISPUTES YOU MAY HAVE WITH FCA. YOU MAY OPT OUT OF THE BINDING INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER AS PROVIDED BELOW.
YOUR LEGAL CAPACITY TO ACCEPT THIS AGREEMENT

- You must be at least 18 years old or the age of majority as determined by the laws of Your state or province of residency, to assume the obligations set forth in this Agreement and You hereby represent to Us that You meet that requirement and have the legal capacity to do so.
- If You are under 18 years of age but are at least 15 years old (a "Minor"), You represent, acknowledge and agree that You are assuming the obligations set forth in this Agreement with Your parent's or legal guardian's permission.
- If You are a parent or legal guardian of a Minor, You hereby agree to bind the Minor to this Agreement and to fully indemnify and hold Us harmless if the Minor fails to comply with this Agreement.

FCA RESERVES THE RIGHT TO MODIFY THE SITES OR THE TERMS AT ANY TIME IN OUR SOLE DISCRETION.

- Depending upon the nature of the modifications, We

*Id.* at ¶ 8. The FCA Website Terms of Use contain an arbitration agreement shown in part below:



14. DISPUTES; BINDING ARBITRATION; CLASS ACTION AND JURY TRIAL WAIVER
Please read the following (this "Provision") carefully as it affects Your rights. Most concerns can be resolved quickly by contacting Us at 800-800-2813. This Provision facilitates the prompt and efficient resolution of any disputes that may arise between You and FCA regarding the Sites and Your access to and use of the Sites.
This Provision provides that all Disputes between You and FCA shall be resolved by binding arbitration. Arbitration is a form of private dispute resolution in which persons with a

*Id.* at ¶ 9; *see also id.* at Ex. A (complete text of the FCA Website Terms of Use). Relevant here, the FCA Website Terms of Use provide:

- "This Provision facilitates the prompt and efficient resolution of any disputes that may arise between You and FCA regarding the Sites and Your access to and use of the Sites," and "provides that all Disputes between You and FCA shall be resolved by binding arbitration."

- "The term 'Dispute' means any dispute, claim, or controversy between You and FCA regarding, arising out of or relating to any aspect of Your relationship with FCA, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable cause of action or claim for relief, and includes the validity, enforceability or scope of this Provision … 'Dispute' is to be given the broadest possible meaning that will be enforced …"
- "WE EACH AGREE THAT … ANY AND ALL DISPUTES, AS DEFINED ABOVE, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT IN ACCORDANCE WITH THIS PROVISION."

*Id.* at Ex. A, p. 14.

**B. <u>Myers' Provision Of His Email Address In Arbitration Reveals Account Creation.</u>**

Myers filed his arbitration case against FCA US with JAMS on May 2, 2025. *See* Ex. C, Myers' Complaint And Demand For Arbitration, p. 10. In that arbitration, Myers alleged he had visited the Dodge website and that unwanted cookies had thereby been placed on his computer "despite [his] rejection of all cookies." *Id.* at ¶¶ 1, 7.

The arbitrator issued an order allowing limited discovery on whether "an enforceable arbitration agreement [was] formed" and the late-payment waiver issue (*see* § III.C, *infra*). *See* Ex. E, Arbitrator's Aug. 20, 2025 Order After Conference Call. On August 27, 2025, Myers' counsel emailed FCA US's counsel providing Myers' Yahoo email address. *See* Ex. F, Aug. 27, 2025 Email from Madeleine Wykstra, p. 1.

Using the email address Myers' counsel provided, FCA US searched its account records and determined a person identifying himself as "Terry Myers" and providing Myers' Yahoo email address had (1) created an account on FCA US's mobile app on December 15, 2024 and (2) used the login and password created for the account to sign into the Jeep website/app on multiple occasions thereafter. *See* Ex. B, Pascoe Decl., ¶ 4. On August 28, 2025, FCA US's counsel provided Myers' counsel a declaration by Jillian Pascoe (Director for Customer Data & Analytics

at FCA US) confirming the information regarding Myers' account creation. *See* Ex. G, Oct. 28, 2025 Email from Thomas L. Azar, Jr.

**C. FCA US's Inadvertent One-Week Delay Paying JAMS' Fee.**

The "waiver" argument Myers raised in the arbitration was based on FCA US's delay in tendering an arbitration fee payment to JAMS. On June 23, 2025, JAMS posted its invoice for the arbitrator's retainer to the JAMS online Access site. *See* Ex. H, Sept. 19, 2025 Declaration of Thomas L. Azar, Jr. ("Azar Payment Decl."), ¶ 2 & Ex. A. FCA US's outside counsel directed his administrative staff to have his law firm issue a check for that retainer to JAMS on June 27, 2025. *Id.* at ¶ 3. However, due to an inadvertent mistake by that attorney, the checks for several other arbitration cases – but not Myers' case – were sent at that time. *Id.* at ¶¶ 3-4, 8.

On July 24, 2025, the JAMS case administrator emailed FCA US's counsel a reminder that the invoice payment was due. *Id.* at ¶ 5 & Ex. B. FCA US's counsel responded that day explaining he believed the check had already been sent. *Id.* However, when he checked with his firm and could not find a record of the check going out, he directed a new check be prepared and sent overnight delivery to JAMS on Friday, July 25, 2025. *Id.* On Wednesday, July 30, 2025, JAMS issued an updated statement on the JAMS Access site showing the full payment for the invoice had been received. *Id.* at ¶ 7 & Ex. C.

On July 31, 2025, the JAMS case administrator emailed the parties a link to schedule the initial conference in the case. *See* Ex. I, FCA US's Rule 13(b) Request That Arbitrator Impose Conditions On Claimant's Withdrawal From Arbitration ("FCA US's Rule 13(b) Request"), p. 2 & Ex. 5. FCA US's counsel responded by providing dates, but Myers' counsel did not. *Id.*; *see also id.* at Ex. 6. Instead, on August 4, 2025 – after the payment issue had already been resolved – Myers' counsel emailed the case administrator stating that "[i]f payment was late or if payment is still outstanding, Claimant requests administrative closure of the case pursuant to CCP § 1281.98." *Id.* at Ex. 7. The JAMS case administrator sent a follow-up scheduling email on August 7, 2025. *Id.* at Ex. 8. Once Myers' counsel responded, the initial conference in the arbitration was scheduled for August 20, 2025. *Id.* at Ex. 9.

**D. The Stay Of The (Still Pending) Arbitration.**

Several months after FCA US provided Myers' counsel declarations regarding his account creation and the late payment issue, and while discovery in the arbitration was still ongoing, Myers sought to withdraw his claim from arbitration. *Id.* at p. & & Ex. 13. FCA US opposed the withdrawal. *See*, *generally*, *id.* The arbitrator declined to allow the withdrawal, but stayed the case temporarily to allow Myers "to file a Superior Court action, where the issue of whether Respondent's late payment of arbitration fees amounts to a waiver can be litigated." *See* Ex. D, Arbitrator's Dec. 17, 2025 Order Staying Arbitration. Myers never filed the Superior Court action, and instead simply filed this putative class action. *See* Ex. A, Azar Arb. Mtn. Decl., ¶ 4.

## IV. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate disputes arising from "a contract evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The court's role under the [FAA] is … limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc.*, 57 F.4th 680-81 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020)).

On the issue of whether an agreement to arbitrate exists, "federal courts apply ordinary state-law principles that govern the formation of contracts." *Reichert v. Rapid Inv., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (quotation and marks omitted). Under California law, "[a] defendant may meet its 'initial burden to show an agreement to arbitrate' merely 'by attaching a copy of the arbitration agreement purportedly bearing the [plaintiff's] signature' to the motion to compel arbitration." *Tecero v. Sacramento Logistics LLC*, 2025 WL 43125, **2-3(E.D. Cal. Jan. 7, 2025) (quoting *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal.App.4th 1047, 1060 (2016)). Then, "the burden shifts to the party opposing arbitration … to offer evidence creation a factual dispute." *Rios v. Cognizant Tech. Solutions U.S. Corp.*, 2025 WL 1684178, *3 (E.D. Cal. June 16, 2025) (quotation omitted).

Electronic signatures are valid, and the "burden of authenticating an electronic signature is not great." *Id.* (quotation omitted); *see also* Cal. Civ. Code § 1633.7 (California's Uniform Electronic Transaction Act). Declarations by non-movants that simply attest they do "not recall signing the agreement" or do "not know how their signatures were placed on the documents" fail to create a factual dispute on an agreement's existence – instead, actual evidence of a purported forgery is required. *Id.* (quoting *Bracamontes v. United Rentals, Inc.*, 2024 WL 1884052, *4 (E.D. Cal. Apr. 30, 2024)). Likewise, "one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it." *Gonzalez v. Peak Cal. Restaurant Grp., LLC*, – F.Supp.3d – , 2026 WL 765325, *4 (N.D. Cal. Mar. 18, 2026) (quoting *Hulsey v. Elsinore Parachute Ctr.*, 168 Cal.App.3d 333, 339 (1985)). If a factual dispute is sufficiently raised, the movant "bears the burden of demonstrating the existence of an arbitration agreement by a preponderance of the evidence." *Tecero*, 2025 WL 43125, at *2.

On scope, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (same). Where the agreement "delegates the arbitrability question to the arbitrator," however, "the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019); *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1026 (9th Cir. 2022) (delegation clauses "require the arbitrator, rather than courts, to resolve threshold questions about the scope and enforceability of the arbitration provision").

## IV. ARGUMENT

### A. The Court Should Compel Arbitration On Myers' Claims.

Both of the requirements for compelling arbitration are plainly satisfied here. FCA US's records confirm Myers created an account and expressly agreed (by affirmatively clicking a box) to the FCA Website Terms of Use which contain an arbitration agreement. *See* §§ II.A, B, *supra*. Courts routinely find such arbitration agreements valid and enforce them. *See, e.g.*, *Xtrasaver,*

*Inc. v. Klipsch Grp., Inc.*, 2025 WL 3725695, **4-5 (C.D. Cal. Dec. 5, 2025) (compelling arbitration because "[p]laintiff was necessarily confronted with the terms and made the decision to accept them by checking the box"); *Ghazizadeh v. Coursera, Inc.*, 737 F.Supp.3d 911, 930 (N.D. Cal. 2024) (plaintiff was presented with a button "located directly adjacent to the notice containing the hyperlink to the TOU," so "the Court concludes that Plaintiff unambiguously assented to Coursera's terms of service as displayed in the … Sign-Up Screen").

And, there can be no dispute regarding the scope of arbitrability, since the FCA Website Terms of Use delegate all disputes over "the validity, enforceability or scope of this Provision" to the arbitrator for decision. *See* § III.A, *supra*. In any event, the arbitration agreement's plain language (requiring arbitration of "all disputes," including specifically "any disputes that may arise between You and FCA regarding the Sites and Your access to and use of the Sites") clearly encompasses the claims Myers asserts in this case.

Thus, arbitration should be compelled.

**B. <u>The Late Payment Issue Will Not Allow Myers To Avoid Arbitration.</u>**

In the arbitration, Myers argued that FCA US's one-week delay in tendering payment to JAMS constituted a waiver of its right to arbitrate under Cal. Civ. Proc. Code § 1281.98. *See* Ex. E, Arbitrator's Aug. 20, 2025 Order After Conference Call; *see also* § III.C, *supra*. The California Supreme Court's holding in *Hohenshelt* makes clear that no waiver could exist here:

> "[S]ection 1281.98, properly construed, is not preempted by the FAA. Although section 1281.98 has been interpreted by various Courts of Appeal to impose an inflexible and sometimes harsh rule resulting in a loss of arbitral rights, we reject that rigid construction and instead conclude that the statute does not abrogate the long-standing principle, established by statute and common law, that one party's nonperformance of an obligation automatically extinguishes the other party's contractual duties ***only when nonperformance is willful, grossly negligent, or fraudulent***. As explained below, the Legislature sought to deter companies and employers from engaging in ***strategic*** nonpayment of arbitration fees; ***we find no indication that it intended to strip companies and employers of their contractual***

> ***right to arbitration where nonpayment of fees resulted from a good faith mistake, inadvertence, or other excusable neglect***."

18 Cal.5th at 323 (emphasis added).

No law supports the notion that an inadvertent one-week delay in paying an arbitration invoice, remedied before the other party even notices or complains, could ever show the sort of "willful, grossly negligent, or fraudulent" conduct required for a waiver of arbitration rights. And, since *Hohenshelt* was decided, courts have consistently held that circumstances involving only an unintentional and brief delay in payment cannot support any waiver under § 1281.98. *See, e.g.*, *Wilson v. Tap Worldwide, LLC*, 114 Cal.App.5th 1077, 1088-89 (2025) (no waiver "as a matter of law" where respondent "missed the 30-day deadline by three days" due to mistake); *see also Colon-Perez v. Sec. Indus. Specialists, Inc.*, 2026 WL 381127, *2 (Cal. App. Feb. 11, 2026) (vacating order finding waiver in light of *Hohenshelt* where "there is not the slightest suggestion in the record before us that defendant "engag[ed] in strategic nonpayment of arbitration fees"); *Kim v. Sun-Mar Health Care, Inc.*, 2026 Cal. Super. LEXIS 17901, **5-6 (Cal. Super. Ct. Mar. 9, 2026) (arbitration respondent's 13-day delay did not result in waiver, since "the evidence shows that Defendants' nonpayment was not strategic as they did pay the arbitration fees shortly after the strict deadline"). Myers cannot avoid arbitration based on the late payment error.

### C. <u>Alternatively, Arbitration Discovery Should Be Ordered.</u>

It is well-settled that a court has the authority to direct a limited period of arbitration-focused discovery. *See, e.g.*, *Litton v. Roblox Corp.*, 2026 WL 1483493, **1-3 (N.D. Cal. May 27, 2026); s*ee also Alvarez v. T-Mobile USA, Inc.*, 822 F.Supp.2d 1081, 1085 (E.D. Cal. 2011) (finding arbitration discovery appropriate to help resolve dispute "on formation of an agreement," but not other issues). FCA US believes Myers has no factual basis to dispute contract formation. But, since Myers sought to withdraw from the arbitration and the arbitrator stayed the case while discovery was still ongoing, FCA US cannot know what arguments Myers may seek to raise in opposition to this motion. Thus, to the extent this Court may find a factual dispute on whether an agreement to arbitrate was formed, FCA US respectfully requests an opportunity to conduct a short

period of targeted discovery on that issue.

## V. CONCLUSION

For the foregoing reasons, Defendant FCA US LLC respectfully requests this Court compel arbitration on Myers' claims, or alternatively allow arbitration discovery.

June 29 2026

**KLEIN THOMAS LEE & FRESARD**

By: /s/ *Kristyn Wong*

Kristyn Wong (346644)
kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, California 92614
Telephone: (949) 676-4570

Thomas L. Azar, Jr. (*admitted Pro Hac Vice*)
tom.azar@kleinthomaslaw.com
Sarah Molina (admitted *Pro Hac Vice*)
100 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Telephone: (314) 888-2970

*Counsel for Defendant FCA US LLC*

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on **June 29, 2026**, a true and correct copy of the foregoing **FCA US LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION ON PLAINTIFF MYERS' CLAIMS, OR ALTERNATIVELY FOR ARBITRATION DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was filed with the Clerk using the CM/ECF system, which will provide notice to all the counsel of record:

Samie Long