Kristyn Wong (346644)
kristyn.wong@kleinthomaslaw.com
**KLEIN THOMAS LEE & FRESARD**
1920 Main Street, Suite 230
Irvine, California 92614
Tel: (949) 676-4570

Thomas L. Azar, Jr. (admitted *Pro Hac Vice*)
tom.azar@kleinthomaslaw.com
Sarah K. Molina (admitted *Pro Hac Vice*)
sarah.molina@kleinthomaslaw.com
**KLEIN THOMAS LEE & FRESARD**
100 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Tel: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN BELTRAN, PAUL GIOFFRE and TERRY DEAN MYERS, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US, LLC dba STELLANTIS NORTH AMERICA, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.: 3:26-cv-03899-RFL**<br><br>**FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Action Filed: May 1, 2026<br><br>**DATE:** Tuesday, September 15, 2026<br>**TIME:** 10:00 a.m.<br>**JUDGE:** Hon. Rita F. Lin<br>**COURTROOM:** 15 |

/ / /

/ / /

/ / /

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, September 15, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 15, 18th Floor, of the above-captioned courthouse located at 450 Golden Gate Ave., San Francisco, California, Defendant FCA US LLC will and hereby does move this Court for an order under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing Plaintiffs' Class Action Complaint.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, and on such other and further matters as may be presented to the Court at or prior to the hearing.

DATED: June 29, 2026

**KLEIN THOMAS LEE & FRESARD**

By: */s/ Kristyn Wong*
Thomas L. Azar, Jr.
Sarah K. Molina
Kristyn Wong

*Attorneys for Defendant FCA US LLC*

**TABLE OF CONTENTS**

**Page**


TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ISSUES TO BE DECIDED ........ 1

III. RELEVANT FACTS ........ 2

IV. ARGUMENT ........ 4

A. Dismissal Is Required For Lack Of Standing. ........ 4

B. The Privacy Claims Fail (Counts I & II). ........ 6

C. The CIPA Claims Fail (Counts III & IV). ........ 8

*1. The CIPA § 631(a) Wiretapping Claim Fails (Count III)* ........ *8*

*2. The CIPA § 638.51 Pen Register Claim Fails (Count IV).* ........ 11

D. The Fraud Claim Fails (Count V). ........ 13

E. The Unjust Enrichment Claim Fails (Count VI). ........ 14

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 11

*Campbell v. Honey Science, LLC*, – F.Supp.3d – , 2026 WL 1725892 (N.D. Cal. June 15, 2026) ........ 7

*Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117 (S.D. Cal. 2023) ........ 7

*Doe I v. Google LLC*, 741 F.Supp.3d 828 (N.D. Cal. 2024) ........ 15

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ........ 11

*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 15

*Hammerling v. Google LLC*, 615 F.Supp.3d 1069 (N.D. Cal. 2022) ........ 7

*Hernandez v. Hillsides, Inc.*, 211 P.3d 1063 (Cal. 2009) ........ 7

*Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633 (Cal. 1994) ........ 6

*Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 6

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 4, 7, 8

*In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968 (N.D. Cal. 2014) ........ 7

*In re MacBook Keyboard Litig.*, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ........ 15

*Jones v. Peloton Interactive, Inc.*, 720 F.Supp.3d 940 (S.D. Cal. 2024) ........ 7

*Jones v. Tonal Systems, Inc.*, 751 F.Supp.3d 1025 (S.D. Cal. 2024) ........ 6

*Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ... 12

*Lau v. Gen Digital Inc.*, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ... 14

*Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010 (N.D. Cal. 2012) ... 7

*Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) ... 5

*Mitchener v. CuriosityStream, Inc.*, 815 F.Supp.3d 845 (N.D. Cal. 2025) ... 5, 12

*Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374137 (C.D. Cal. Feb. 20, 2003) ... 9

*Ortiz v. Deckers Outdoor Corp.*, 2026 WL 1243675 (N.D. Cal. May 6, 2026) ... 13, 14

*People v. Curiel*, 15 Cal.5th 433 (2023) ... 9

*People v. Lopez*, 188 Cal.App.3d 592 (1986) ... 9

*Popa v. Microsoft*, 153 F.4th 784 (9th Cir. 2025) ... 1, 4, 6

*Rogers v. Ulrich*, 52 Cal.App.3d 894 (1975) ... 8

*Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ... 15

*Shah v. Fandom, Inc.*, 754 F.Supp.3d 924 (N.D. Cal. 2024) ... 12

*Shulman v. Group W Productions, Inc.*, 955 P.2d 469 (Cal. 1998) ... 6, 7

*Sisti v. Bosley Inc.*, – F.Supp.3d – , 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ... 5

*Small v. Fritz Cos., Inc.*, 30 Cal.4th 167 (2003) ... 14

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) .......... 10, 11

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .......... 9, 10, 11

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 4

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) .......... 4

*Tsering v. Meta Platforms, Inc.*,
2026 WL 1433958 (N.D. Cal. May 21, 2026) .......... 13

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 8, 15

*Warden v. Kahn*,
99 Cal.App.3d 805 (1979) .......... 8

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 14

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F.Supp.3d 1139 (E.D. Cal. 2025) .......... 5

*Yoon v. Lululemon USA, Inc.*,
549 F.Supp.3d 1073 (C.D.Cal. 2021) .......... 5

**Statutes**

Cal. Pen. Code § 20 .......... 9

Cal. Penal Code § 631(a) .......... 8, 9

Cal. Pen. Code § 638.50(b) .......... 11, 12

Cal. Pen. Code § 638.50(c) .......... 12

Cal. Pen. Code § 638.51(a) .......... 11

## I. INTRODUCTION

Plaintiffs Martin Beltran, Paul Gioffre, and Terry Dean Myers bring this putative class action based on visits to Defendant FCA US LLC's various websites, including www.jeep.com (the "Jeep website"), www.dodge.com (the "Dodge website"), www.chrysler.com (the "Chrysler website"), www.ramtrucks.com (the "Ram website"), www.fiatusa.com (the "Fiat website"), www.alfaromeousa.com (the "Alfa Romeo website"), www.mopar.com (the "Mopar website"), and www.stellantisfleet.com (the "Stellantis website"), collectively "the websites."[1]

Plaintiffs assert claims for violations of the California Invasion of Privacy Act ("CIPA"), as well as claims for invasion of privacy, intrusion upon seclusion, fraud, and unjust enrichment.[2] These claims are based on allegations FCA US included cookies or "similar tracking technologies" on its websites to track and collect data "regarding visitors to the websites' behaviors and communications" on those websites.[3]

Plaintiffs plead nothing to suggest anything about their interactions with the websites – which relate to the automobiles FCA US manufactures and sells – implicates any "embarrassing, invasive, or otherwise private information." *Popa v. Microsoft*, 153 F.4th 784, 791 (9th Cir. 2025). Thus, as the Ninth Circuit has explained, they have not pleaded the type of tracking or collection that can show standing. *Id.* And, Plaintiffs also fail to plead facts that would show any cognizable claim. Thus, the complaint should be dismissed in its entirety.[4]

## II. ISSUES TO BE DECIDED

1. Should the Court dismiss all claims because Plaintiffs lack standing?

---

[1] *See* Class Complaint ("Comp."), ECF # 1, ¶¶ 98, 108, 119.

[2] *See id.* at ¶¶ 140-213.

[3] *See id.* at ¶¶ 2-4.

[4] Because FCA US's records (obtained in a pending arbitration between Plaintiff Myers and FCA US regarding his website visits) show Myers has expressly agreed to arbitration of the claims he asserts in this case, FCA US has also filed a motion to compel arbitration on his claims. FCA US seeks dismissal of Myers' claims in this motion only in the event that the Court deny FCA US's motion to compel arbitration on those claims.

2. Should the Court dismiss Plaintiffs' invasion of privacy and intrusion upon seclusion claims because there is no privacy interest in the information that was allegedly collected and/or shared and the alleged conduct was not "egregious" or "highly offensive"?

3. Should the Court dismiss Plaintiffs' CIPA wiretapping claim because there is no liability for "tapping" your own line and Plaintiffs fail to plead facts showing the intent required for an aiding and abetting claim?

4. Should the Court dismiss Plaintiffs' CIPA pen register claim when (1) that statute only applies to devices that do not capture the "contents" of communications, but Plaintiffs expressly plead the cookies at issue do capture "contents" and (2) Plaintiffs fail to plead facts showing the "dialing, routing, addressing, or signaling information" was actually used for subsequent communications?

5. Should the Court dismiss Plaintiffs' fraud claim when they fail to plead any details about when the alleged fraud occurred (aside from sometime "during the last four years"), fail to plead facts that plausibly show FCA US knew of the alleged nonfunctionality of the websites' cookie settings toolbar, and fail to plead facts to support damages?

6. Should the Court dismiss Plaintiffs' unjust enrichment claim when they fail to plead facts showing their legal remedies are inadequate, and fail to state a claim against FCA US for unlawful conduct?

## III. <u>RELEVANT FACTS</u>

Plaintiffs Martin Beltran, Paul Gioffre, and Terry Dean Myers[1] plead they each visited one or more of FCA US's websites to browse for information about its automobiles "on one or more occasions over the last four years." *See* Comp. ¶¶ 98, 108, 110, 119, 121-23. Beltran pleads he visited the Dodge website, Gioffre the Jeep website, and Myers the Jeep, Dodge, Chrysler, Ram, Fiat, Alfa Romeo, Mopar, and the Stellantis Fleet websites. *Id.* at ¶¶ 98, 108, 121-23.

When Plaintiffs visited the websites, a cookie consent banner pop-up was displayed. *Id.* at ¶ 1. Plaintiffs allege they selected "Opt-Out of Cookies" in the "Cookie Settings" link on their

[1]The Complaint alternatively refers to Myers as both "Myers" and "Meyers."

respective browsers. *Id*. at ¶¶ 100-01, 112-13, 125-26.

Everything else Plaintiffs allege about the websites is simply on "information and belief." *See* Comp. p. 3 (first paragraph). Plaintiffs contend FCA US integrated "resources and programming scripts from third parties" into its websites that caused "third parties" to place cookies that intercept and track users' website browsing activities and communications on FCA US's websites despite their wish to "opt-out of cookies." *Id*. at ¶¶ 2-3, 37. Plaintiffs identify only one third party: Meta Platforms, Inc. *Id*. at ¶ 3. Plaintiffs claim "private communications" like browsing and visit history on the website, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data were obtained by the third parties via these cookies. *Id*. at ¶ 50. They specifically allege the cookies at issue capture "the contents of the communications," and that the cookies at issue allow third parties to "read and process the contents of user communications." *Id*. at ¶¶ 76, 85-87; *see also, e.g.*, *id*. at ¶¶ 173-74.

Plaintiffs further allege the third parties analyze and aggregate user data to create consumer profiles, audience segments, and targeted advertising. *Id*. at ¶ 5. All Plaintiffs admit they lack the technical knowledge necessary to know if cookies or other tracking technology are actually used on the websites. *Id*. at ¶¶ 107, 118, 131. Despite this, Plaintiffs do not allege any facts about how they came to learn cookies or tracking tools were used while they visited the websites. *See*, *generally*, Comp. On May 2, 2025, Myers filed an arbitration against FCA US that "asserted claims arising from the same conduct alleged" in this action. *See* Comp. ¶ 19 & Ex. A. The facts alleged and discovery obtained in Myers' still-pending arbitration with FCA US are detailed in FCA US's motion to compel arbitration, filed herewith.

For their alleged injury, Plaintiffs plead harm to their privacy interests, loss of value in their private communications, and loss of money and/or property – but they do not plead any facts or explanations about those alleged losses and/or harms. *Id*. at ¶¶ 150, 160, 178, 197. Based on the foregoing allegations, Plaintiffs assert claims for: invasion of privacy (Count I); intrusion upon seclusion (Count II); violation of CIPA, Cal. Pen. Code § 631 (Count III); violation of CIPA, Cal. Pen. Code § 638.51 (Count IV); common law fraud, deceit, and/or misrepresentation (Count V);

and unjust enrichment (Count VI). *See id.* at ¶¶ 140-213.

## IV. ARGUMENT

### A. Dismissal Is Required For Lack Of Standing.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements," which every plaintiff must demonstrate: (1) an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) fairly traceable to the challenged conduct of the defendant; (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As the Supreme Court explained in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), it is not sufficient to merely allege a violation of some statute, and "[o]nly those plaintiffs who have been ***concretely harmed*** by a defendant's statutory violation may sue that private defendant over that violation." *Id.* at 427 (emphasis in original).

Post-*TransUnion*, the Ninth Circuit has addressed purported injuries like those alleged here, and held they fail to show the concrete injury standing requires. In *Popa v. Microsoft*, 153 F.4th 784 (9th Cir. 2025), the plaintiff alleged she visited a pet supplies website, and that software captured data about her computer and browser as well as all her "behavior on the website" then delivered this data to the software developer and the website owner. *Id.* at 786-87. The plaintiff sued both the software developer and the website owner for violation of Pennsylvania's wiretap statute (prohibiting the acquisition of "the contents of any wire, electronic or oral communication" through a device) and invasion of privacy. *Id.* at 787. But, the Ninth Circuit affirmed the dismissal of the plaintiff's claims for lack of standing, since the plaintiff "identifies no embarrassing, invasive, or otherwise private information collected," and thus "does not plausibly allege the infringement of any [] privacy interest." *Id.* at 791-92 (first emphasis added). The Ninth Circuit then proceeded to distinguish prior cases – such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), which involved allegations Facebook tracked users' browsing on other websites even "after they had logged off the social media platform" – explaining those cases relied on an analysis that "finds no support in *TransUnion*," and stressing that each plaintiff's standing turns on the sensitivity of the specific information collected by the defendant. *See Popa*, 153 F.4th at 793-94.

Here, Plaintiffs' claims and purported injuries are based on allegations the cookies on FCA US's websites obtained Plaintiffs' "browsing activities" on those websites and Plaintiffs' "private communications with Defendant." *See, e.g.*, Comp. ¶¶ 33, 50. The types of information at issue are simply things like: what parts of the websites Plaintiffs viewed; the number of visits; the date and time of the visit; whatever data they inputted on the websites for submission to FCA US (*e.g.*, as part of an order or request for further information); any "[i]nferences" that could be drawn from what Plaintiffs did on the websites; "device information" like whether a tablet, laptop, or desktop was used and what type of operating system and browser it had; and "geolocation data" (*i.e.*, an IP address). *See, e.g.*, *id.* at ¶¶ 33, 50.

The Ninth Circuit's analysis in *Popa* confirms none of this implicates any protectable privacy interest, and a host of courts have found standing lacking under similar allegations. *See, e.g.*, *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694, *4 (E.D. Cal. Mar. 31, 2026) ("The information plaintiff alleges was collected by the trackers here – button clicks, page visits, scrolls, session lengths, URLs, and IP addresses, apparently collected after one visit to the UHC website in July 2025 – resembles exactly the kind of 'non-sensitive browsing activity on a single website' that courts have repeatedly found insufficient to establish a concrete injury." (quotation omitted)); *Sisti v. Bosley Inc.*, – F.Supp.3d – , 2026 WL 1223927, **1, 3-5 (C.D. Cal. Apr. 27, 2026) (no standing for claim that defendant used "tracking pixels embedded on its website" to collect fact of plaintiff's visit to defendant's website, and then shared "'identifiers' that enabled Meta and TikTok to identify him"); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F.Supp.3d 1139, 1145 (E.D. Cal. 2025) (no concrete injury where plaintiffs "do not allege that the third-party trackers collected any … 'embarrassing, invasive, or otherwise private information'" (quotation omitted)); *Mitchener v. CuriosityStream, Inc.*, 815 F.Supp.3d 845, 850-51 (N.D. Cal. 2025) ("The mere 'collection of basic contact information by … software[,] or where the plaintiffs merely visited the website[,] are not concrete harms." (alterations in original, quotation omitted)); *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1086 (C.D. Cal. 2021) (dismissing for lack of standing because "courts have been less willing to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company").

There is simply nothing "embarrassing, invasive, or otherwise private" about visiting an automaker's website or Plaintiffs' communications with FCA US through such a website. Because Plaintiffs fail to plead facts showing the information allegedly collected and shared is of the type that can support a concrete and traceable injury, they lack standing and dismissal is required.

**B. <u>The Privacy Claims Fail (Counts I & II).</u>**

Plaintiffs assert claims for invasion of privacy (Count I) and intrusion upon seclusion (Count II). *See* Comp. ¶¶ 140-61. Each of these claims are premised on allegations FCA US's use of the cookies/trackers on its websites was a "serious," "egregious," and/or "highly offensive" violation of their privacy. *See, e.g.*, *id.* at ¶¶ 141, 146-47, 153, 157.

For an invasion of privacy claim, Plaintiffs must show (1) "a specific, legally protected privacy interest," (2) "a reasonable expectation of privacy," and (3) an invasion "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 654-55 (Cal. 1994). The requirements of a claim for intrusion upon seclusion are similar, and a plaintiff must plead the intrusion occurred "in a manner highly offensive to a reasonable person." *Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 490 (Cal. 1998). Both claims fail.

***First***, there are no facts pleaded to show any "legally protected privacy interest" or a "reasonable expectation of privacy" in the information that was allegedly collected and/or shared. Both elements depend on "***the content***" of the information shared, since there is no privacy interest or expectation of privacy "in electronic messages, in general." *Jones v. Tonal Systems, Inc.*, 751 F.Supp.3d 1025, 1043 (S.D. Cal. 2024) (emphasis added). Informational content "is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 865 P.2d at 654. But, as the Ninth Circuit has explained, information collected about a visit to a commercial website is not this type of information. *Popa*, 153 F.4th at 791 (information about plaintiff's visit to a pet store website does not involve "private information"); *see also Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect

as much.”). Plaintiffs fail to plead facts showing any “private” information is at issue. *See*, *generally*, Comp.

***Second*,** Plaintiffs have failed to plead the “highly offensive” or “egregious breach of social norms” required for both invasion of privacy and intrusion upon seclusion. *See Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1078 (Cal. 2009); *Shulman*, 955 P.2d at 490. Courts agree the collection of data by a website owner about visits ***to its own website***, or the disclosure of such data, is neither “highly offensive” nor “egregious.” *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 58 F.Supp.3d 968, 973-75, 988 (N.D. Cal. 2014) (collecting and sharing such information does not meet the “‘high bar’ for the requisite intrusion that is highly offensive to a reasonable person”); *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1016-17, 1025 (N.D. Cal. 2012) (disclosure of user’s unique numeric code, URLs of pages viewed and website activity to third parties, including data brokers, was not “highly offensive” or a “serious invasion” of a privacy interest); *see also Jones v. Peloton Interactive, Inc.*, 720 F.Supp.3d 940, 951 (S.D. Cal. 2024) (dismissing claim because “[t]he collection of users[’] information concerning various fitness products and services shared on the chat does not rise to the level of ‘an egregious breach of social norms’”). Indeed, courts agree that internet tracking is “the kind of ‘routine commercial behavior’ that does not constitute ‘a highly offensive intrusion of privacy.’” *Campbell v. Honey Science, LLC*, – F.Supp.3d – , 2026 WL 1725892, *3 (N.D. Cal. June 15, 2026) (quoting *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022)) (dismissing claims based on browser extension that monitored online shopping activity and applied coupons).

This requirement is only satisfied if something truly out of the ordinary is alleged, such as trackers that continue to monitor and report users’ browsing activities ***after*** they have left the defendant’s website, or that collect and disclose sensitive health or financial information. *See, e.g.*, *In re Facebook*, 956 F.3d at 598, 602 (finding allegations stated claim where “Facebook continued to collect their data ***after they had logged off*** the social media platform” (emphasis added)); *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1127 (S.D. Cal. 2023) (dismissing claims based on sharing of browsing activity on site, but allowing separate claims about the disclosure of private health information from appointment scheduling page to proceed). But here,

Plaintiffs make no allegations FCA US monitored their browsing activities after they left the websites and instead say the cookies track behavior "on the Websites." Comp. ¶ 51. Nor do they plead facts to suggest browsing for automobiles or automotive parts would be at all sensitive. *See*, *generally*, Comp.

Furthermore, as this Court recently explained, where the plaintiff fails to allege facts plausibly showing the defendant's conduct was knowing and intentional, no "highly offensive" intrusion has been plausibly pleaded. *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, *7 (N.D. Cal. Jan. 12, 2026) ("*Tsering I*") (dismissing invasion of privacy claim on this basis). As discussed below, Plaintiffs simply plead FCA US "knew, or should have known" how the third parties' cookies worked and that adjusting the cookie settings toolbar would not prevent those cookies – but no actual facts to support FCA US's alleged misconduct was intentional or knowing. *See, e.g.*, Comp. ¶ 195; *see also* §§ IV.C.1.a, IV.D, *infra*. Thus, they have not pleaded the type of intrusion or privacy violation that will support any claim.

For these reasons, the invasion of privacy and intrusion upon seclusion claims in Counts I and II should be dismissed.

**C. <u>The CIPA Claims Fail (Counts III & IV).</u>**

***1. The CIPA § 631(a) Wiretapping Claim Fails (Count III).***

In Count III, Plaintiffs assert claims for violation of CIPA's wiretapping provision, which imposes liability on one who "willfully or intentionally" "taps" any telegraph or telephone line or otherwise unlawfully accesses "the contents" of such a message. *See* Comp. ¶¶ 162-80; *see also* Cal. Penal Code § 631(a). This claim fails for two reasons.

a. <u>No Claim For "Tapping" Your Own Line.</u>

First, it is well-established that a party cannot be liable under § 631(a) for "tapping" their own line, or accessing the contents of communications they are party to. *See, e.g.*, *In re Facebook*, 956 F.3d at 607 (finding § 631(a) "contain[s] an exemption from liability for a person who is a 'party' to the communication"); *Warden v. Kahn*, 99 Cal.App.3d 805, 811 (1979) (explaining statute only applies to "eavesdropping by a third party," so it cannot be applied to any recording "by a participant"); *Rogers v. Ulrich*, 52 Cal.App.3d 894, 897-99 (1975) (no violation where party

to communication shared recording with a third party). And, obviously, FCA US is a party to any communication when Plaintiffs are visiting its own websites – indeed, Plaintiffs expressly plead this. *See, e.g.*, Comp. ¶ 180 (explaining their claims are premised on an interception of Plaintiffs' "Private Communications ***with Defendant***" (emphasis added)). Thus, to the extent Plaintiffs are trying to plead some direct claim against FCA US, that claim fails.

b. <u>No Facts To Support Intent For "Aiding And Abetting" Claim.</u>

Plaintiffs seem aware of the foregoing case law, and thus appear to be trying to plead their claim under an aiding and abetting theory – *i.e.*, that FCA US violated § 631(a) by aiding and abetting the "Third Parties" in wiretapping Plaintiffs' communications with FCA US's websites. *See* Comp. ¶¶ 170-71, 173-76. Dismissal is required because Plaintiffs have failed to plead facts showing the intent such a claim requires.

"In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." Cal. Pen. Code § 20. A "crime cannot be committed by mere misfortune or accident." *People v. Lopez*, 188 Cal.App.3d 592, 597 (1986). In both the criminal and civil contexts, to have aided and abetted, the party must have had "actual knowledge" that the offending person was committing an unlawful act. *See People v. Curiel*, 15 Cal.5th 433, 468 (2023) (finding that the "the aider and abettor must have 'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense" in the criminal context); *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374137, *10 (C.D. Cal. Feb. 20, 2003) (requiring actual knowledge that the perpetrator would commit a violation to impose aiding and abetting liability in the civil context).

Section 631(a) requires conduct that is performed "willfully" or "intentionally." Cal. Pen. Code § 631(a). And, this Court has twice dismissed similar claims for failure to plead facts showing the intent required. In *Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933 (N.D. Cal. 2024) ("*Smith I*"), the plaintiff attempted to assert an aiding and abetting claim under § 631(a) and this Court dismissed that claim. As the Court explained:

> "[The] language in § 631(a)'s fourth clause does require some level of knowledge and intent. That clause prohibits a defendant from aiding, agreeing with, or

> employing a third party "***to*** unlawfully do, or permit, or cause" the third party to act in violation of the wiretapping statute. Cal. Pen. Code § 631(a) (emphasis added). That language indicates that the defendant must be acting with the third party ***in order to*** have the third party perform acts that violate the statute. At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts. By its plain terms, that statutory language does not cover, for example, a defendant who properly and lawfully provides information or access to a third party without any knowledge or intent that the third party will use the information in a manner that violates the statute. Such a defendant has not aided, agreed with, or employed the third party ***to*** perform acts that violate the wiretapping statute …
>
> Plaintiff fails to allege facts sufficient to show the requisite knowledge and intent. In her complaint, Plaintiff alleges that Defendant was 'aware of the purposes for which Adyen collects consumers' sensitive information because Defendant is knowledgeable of and benefitting from Adyen's fraud prevention services.' (FAC ¶ 41.) Plaintiff also alleges that Defendant 'assists Adyen in intercepting and indefinitely storing this sensitive information.' (*Id.* ¶ 39.) Those conclusory allegations do not contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly agreed with or employed Adyen to engage in conduct that violated the wiretapping statute. Without further information, the Court cannot plausibly infer from Defendant's use of Adyen's fraud prevention services alone that Defendant ***knew*** that Adyen's services were based on its allegedly illegal interception and storing of financial information…"

*Id.* at 942-43 (emphasis in original).

When the plaintiff in *Smith* attempted to replead, this Court again found the intent allegations insufficient and dismissed. *See Smith v. YETI Coolers, LLC*, 2025 WL 877127, **1-2 (N.D. Cal. Mar. 14, 2025) ("*Smith II*"). Specifically, this Court identified a series of allegations (from both the prior complaint and the latest amendment) that it found were insufficient to plead

the requisite intent, including that defendant (1) was "aware" of the third party's purposes or "knowledgeable" about its services; (2) "knowingly and willfully assist[ed] a third party with intercepting and recording [] confidential communications that contain consumers' sensitive financial information"; (3) "knows" about the alleged wiretap "because [the third party] has explained to Defendant that this is how its services function[]"; and (4) "intended" to help the third party. *See id.* at **1-2. But, this Court rejected the notion these allegations could be sufficient, explaining they were "conclusory" and "do not contain ***facts*** about what Adyen communicated to Defendant about how its fraud prevention services operate or about how customer information is stored and incorporated in Adyen's software." *Id.* at *2 (emphasis added). Other courts have reached similar conclusions and dismissed claims for this same deficiency. *See, e.g.*, *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293, **1-3 (S.D. Cal. Aug. 5, 2024) (dismissing claim where plaintiff alleged defendant deployed third party "CarNow" software on website but did not plead facts showing defendant knew CarNow would violate the statute); *B.K. v. Desert Care Network*, 2024 WL 1343305, *7 (C.D. Cal. Feb. 1, 2024) (similar).

Here, Plaintiffs plead ***no facts*** to support the required intent. Rather, they simply aver (on "information and belief") that FCA US: (1) "knew, or should have known, how the Websites functioned, including the Third Parties' resources it installed on the Website"; and (2) "knew, or should have known, that the Websites' programming allowed the third-party cookies to be placed on users' … browsers and devices and/or transmitted to the Third Parties." Comp. ¶ 195; *see also id.* at ¶ 176 (simply alleging that FCA US was "aiding, agreeing with, employing, permitting, or otherwise enabling the Third Parties' conduct"). As this Court explained in *Smith I* and *Smith II*, this fails to plausibly plead any aiding and abetting claim, so dismissal is required.

***2. The CIPA § 638.51 Pen Register Claim Fails (Count IV).***

In Count IV, Plaintiffs assert a claim for violation of CIPA's "pen register" provision in Cal. Pen. Code § 638.51(a), which provides that "a person may not install or use a pen register … without first obtaining a court order." *See* Comp. ¶¶ 181-91. A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is

transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b).

Plaintiffs allege "the Third Party software code and cookies" at issue qualify as pen registers because they capture "signaling" and "addressing" information such as "IP addresses," "port identifiers," and various other "metadata." Comp., ¶¶ 88-91. These allegations fail to state a plausible claim for violation of the pen register provision for at least two reasons.

***First,*** as Plaintiffs acknowledge, CIPA's pen register definition explicitly excludes any "device or process that records or decodes … the contents of a communication." *See, e.g.*, *id.* at ¶ 184; *see also* Cal. Pen. Code § 638.50(b). And, Plaintiffs specifically allege the cookies and software they are suing over ***do*** capture "contents." *See, e.g.*, Comp. ¶ 76 (alleging they capture "the contents of the communications"); *id.* at ¶¶ 85-86 (alleging Facebook/Meta cookies "read and process the contents of user communications"); *see also id.* at ¶¶ 173-74 (similar).

For their pen register claim, Plaintiffs are not alleging there are two separate sets of cookies, one capturing "contents" and another that does not. *See*, *generally*, Comp. Rather, they are basing their pen register claim on the notion the ***same*** cookies they say capture "contents" should also be viewed as pen registers because, on a different ***"[a]pplication layer,"*** non-content information like "port identifiers" and "IP addresses" are ***also*** collected in addition to contents. *See id.* at ¶ 91 (emphasis added) (alleging such information is "separate from any substantive 'message' or 'contents' carried at the higher-level Application layer" of the cookie).

There is nothing in CIPA's definition of "pen register" to suggest the same device/process can be subdivided in this way, so as to turn a single device/process into both a "contents" wiretap and a "non-contents" pen register simultaneously. If a device can capture contents, it is not a pen register. *See, e.g.*, *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 928 (N.D. Cal. 2024) (this Court explaining that to plead a pen register violation, plaintiff needed to plausibly plead device did not capture "the content of the electronic communications"); *see also Mitchener*, 815 F.Supp.3d at 851-52 (holding similar definition of "trap and trace device" in Cal. Pen. Code § 638.50(c) did not apply to devices alleged to capture "contents"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, *4 (N.D. Cal. June 24, 2025) (similar). And, here, Plaintiffs allege that "contents" are collected by the cookies and software at issue. *See, e.g.*, Comp. ¶¶ 76, 85-86, 173-74. Thus,

their pen register claim fails and should be dismissed.

***Second,*** and relatedly, Plaintiffs fail to plead facts, rather than conclusions, to support the notion that their non-content "dialing, routing, addressing, or signaling information" was used. As this Court recently explained, a pen register claim requires pleaded "facts indicating that the IP addresses or geolocation data ***were actually used as*** dialing, routing, addressing, or signaling information" by the device or process "for other subsequent communications." *Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, *6 (N.D. Cal. May 21, 2026) ("*Tsering II*") (emphasis added). Plaintiffs plead no facts to support this in their complaint. *See*, *generally*, Comp. So, their pen register claim fails for this reason too.

**D. <u>The Fraud Claim Fails (Count V).</u>**

In Count V, Plaintiffs assert a fraud claim based on allegations FCA US "fraudulently and deceptively informed Plaintiffs and Class members that they could opt out of or reject all categories of non-essential cookies in use on the Websites," but the "cookies and corresponding software code allowed the Third Parties to access, intercept, read, learn, record, collect, and use Plaintiffs' and Class members' Private Communications" anyway. *See* Comp. ¶¶ 193-94. But, on FCA US's alleged knowledge, Plaintiffs simply plead that it "knew, or should have known" how the "Third Parties' resources" and "third-party cookies" operated from some undescribed "testing" or "metrics." *Id.* at ¶ 195. And, on the details of their own visits, Plaintiffs just allege they visited FCA US's websites "on one or more occasions during the last four years." *Id.* at ¶¶ 98, 108, 119.

This Court has very recently addressed allegations where a plaintiff attempted to assert a fraud claim based on similar allegations. In *Ortiz v. Deckers Outdoor Corp.*, 2026 WL 1243675 (N.D. Cal. May 6, 2026), this Court addressed a fraud claim that was based on allegations the defendant had incorporated third-party resources into its website that installed third party cookies that would transmit data "even after users had disabled non-essential cookies and opted out of sharing their information." *Id.* at *1. As here, the plaintiffs simply alleged the defendant "voluntarily integrated" the third-party resources and "knew, or should have known" how its websites functioned. *Id.* at *2. This Court dismissed the fraud claim, explaining the plaintiff's allegations failed to include the facts needed to show any plausible fraud:

> "The motion to dismiss the fraud claim is granted because the complaint fails to plausibly allege with particularity that Deckers knew its representations that users could disable non-essential cookies and opt out of their information being shared were false … [T]hese allegations are insufficient to support a plausible inference that Deckers understood how the third-party resources operate. Deckers did not itself develop the third-party resources, so even if Deckers incorporated them into its websites voluntarily, that does not suggest that Deckers understood how they functioned … Decker's knowledge of how its own websites worked does not bridge this gap. Therefore, without more, the allegations in the complaint do not support a plausible inference that Deckers knew that user data would be collected and transmitted to third parties regardless of whether users opted out of that collection and transmission, and accordingly do not support a plausible inference that Deckers knew that its representations … were false …"

*Id.* The Court also rejected the notion that pleading website visits "during the last four years" could ever be sufficient. *Id.* (citing *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, *10 (N.D. Cal. Dec. 17, 2025)). Since Plaintiffs' allegations suffer the exact same deficiencies this Court identified in *Ortiz*, their fraud claim should be dismissed.

Plaintiffs also fail to plead facts showing any damages, which is a required element of any fraud claim. *See, e.g.*, *Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 173 (2003). All they proffer are conclusory allegations of an "injury-in-fact, including the loss of money and/or property" and a diminution of "the value of their private and personally identifiable information." Comp. ¶ 197. But, to plausibly plead damages under such a theory, Plaintiffs would need to allege facts showing they "have not been able to capture the full value of their information" as a result of FCA US's conduct. *See, e.g.*, *Lau v. Gen Digital Inc.*, 2024 WL 1880161, *4 (N.D. Cal. Apr. 3, 2024). Since they plead no such facts, their fraud claims should be dismissed for failure to plead damages too.

**E. <u>The Unjust Enrichment Claim Fails (Count VI).</u>**

Finally, in Count VI, Plaintiffs assert a claim for unjust enrichment. *See* Comp. ¶¶ 204-13. This claim seeks recovery in restitution for the same conduct that Plaintiffs seek damages for in

their legal claims. *Compare id.* at ¶¶ 143-45, 149-50, 154, 157, 159-60, 176, 178, 194, 197-99, 202 (seeking damages for websites' alleged failure to follow opt-out requests and "allow[ing] the Third Parties to access … Plaintiffs' and Class members' Private Communications") *with id.* at ¶¶ 206, 209-10, 212 (basing unjust enrichment on same conduct and seeking same relief).

Plaintiffs proffer only a conclusory averment that they "have no adequate legal remedy." *Id.* at ¶ 213. But, as this Court has explained, this is insufficient to support any unjust enrichment claim. *See, e.g.*, *Gilligan v. Experian Data Corp.*, 2026 WL 32259, *4 (N.D. Cal. Jan. 6, 2026) (explaining claim fails "where plaintiffs failed to explain 'how the money they seek through restitution is any different than the money they seek as damages'" and "[n]othing in the Complaint indicates that Plaintiffs' legal remedies are insufficient" (quotation omitted)); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, *4 (N.D. Cal. Oct. 17, 2025) (similar); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020) ("because Sonner fails to demonstrate that she lacks an adequate legal remedy in this case, we affirm the district court's order dismissing her claims for restitution"). And, pleading the unjust enrichment claim in the alternative cannot save this claim, since it can only proceed where a lack of adequate legal remedies is demonstrated. *See, e.g.*, *In re MacBook Keyboard Litig.*, 2020 WL 6047253, *2 (N.D. Cal. Oct. 13, 2020) (explaining that "[t]he question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all"). On this basis, dismissal is required.

Additionally, as this Court has explained, an unjust enrichment claim is properly dismissed where it is based on the same allegations as claims under CIPA, but those claims fail. *See, e.g.*, *Tsering I*, 2026 WL 89320, at *7 ("Because Tsering and Davis 'have not stated a claim against [Meta] for any unlawful conduct, they have also failed to state an unjust enrichment claim.'" (quoting *Doe I v. Google LLC*, 741 F.Supp.3d 828, 849 (N.D. Cal. 2024)). Since Plaintiffs' other claims fail for the reasons set forth above, the unjust enrichment claim also fails.

## V. CONCLUSION

For the foregoing reasons, Defendant FCA US LLC respectfully requests this Court dismiss Plaintiffs' complaint in its entirety.

DATED: June 29, 2026

**KLEIN THOMAS LEE & FRESARD**

By: /s/ *Kristyn Wong*

Kristyn Wong (346644)
kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, California 92614
Telephone: (949) 676-4570

Thomas L. Azar, Jr. (*admitted Pro Hac Vice*)
tom.azar@kleinthomaslaw.com
Sarah Molina (admitted *Pro Hac Vice*)
sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Telephone: (314) 888-2970

*Counsel for Defendant FCA US LLC*

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on **June 29, 2026**, a true and correct copy of the foregoing **FCA US LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** was filed with the Clerk using the CM/ECF system, which will provide notice to all the counsel of record:

Samie Long