**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

MARTIN BELTRAN, PAUL GIOFFRE, and TERRY DEAN MYERS, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

FCA US, LLC,

Defendant.

Case No. 3:26-cv-03899-RFL

**PLAINTIFFS' OPPOSITION TO FCA'S MOTION TO DISMISS PLAINTIFFS CLASS ACTION COMPLAINT**

Hon. Rita F. Lin

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 1
III. ARGUMENT .......... 3
A. Plaintiffs Have Standing to Assert Their Claims. .......... 3
B. FCA's 12(b)(6) Arguments Fail .......... 5
1. Plaintiffs adequately plead claims for common law invasion of privacy and intrusion upon seclusion. .......... 5
i. Plaintiffs allege a reasonable expectation of privacy. .......... 6
ii. FCA's intrusion is highly offensive. .......... 7
2. Plaintiffs Plead Their Wiretapping Claims Under CIPA § 631(a). .......... 8
C. Plaintiffs Sufficiently Allege Their Pen Register Claims. .......... 10
D. Plaintiffs Adequately Plead Fraud Under Rule 9(b). .......... 12
E. Plaintiffs Have Adequately Pleaded Unjust Enrichment. .......... 14
IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*,
No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ..................... 15

*Ayora v. Inspire Brands, Inc.*,
No. 25-cv-03645, 2026 U.S. Dist. LEXIS 126682 (N.D. Cal. Jun. 8, 2026) ..................... 12

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ..................... 10

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ..................... 12, 13

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ..................... 13

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) ..................... 4, 5, 8

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ..................... passim

*Doe v. Xytex Corp.*,
No. C 16-02935 WHA, 2017 U.S. Dist. LEXIS 43623 (N.D. Cal. Mar. 24, 2017) ..................... 13

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ..................... 4

*Esparza v. UAG Escondido A1 Inc.*,
2025 WL 559241 (S.D. Cal. Feb. 12, 2924) ..................... 10

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ..................... passim

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ..................... 5

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ..................... passim

*Gutierrez v. Converse Inc.*,
No. 2:23-cv-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056 (C.D. Cal. Oct. 27, 2023) ....... 10

*Harper v. Silver*,
200 Cal. App. 2d 103 (1962) ..................... 12, 13

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ..................... 5

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ..................... 7

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024). ..................... 7

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................... 7

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ..................... 11

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..................... 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .................... 8, 14

*Magliocca v. United Healthcare Servs.*,
No. 2:25-cv-3388 WBS SCR, 2026 U.S. Dist. LEXIS 70273 (E.D. Cal. Mar. 30, 2026).............. 5

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) .................... 5

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025).............. passim

*Popa v. Microsoft Corp*,
153 F.4th 784 (9th Cir. 2025).................... 4, 7

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024).................... 8

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021)........................ 6, 7

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024).............................. 14

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .................... 15

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) .................... passim

*Shah v. Politico LLC*,
No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) ............. 4, 5, 8, 14

*Sisti v. Bosley Inc.*,
No. 2:25-cv-10669-JFW-DFMx, 2026 U.S. Dist. LEXIS 105590
(C.D. Cal. Apr. 27, 2026).................... 5

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) .................... 3

*Smith v. Yeti Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. Oct. 21, 2024) .................... 9

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024).......................... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).................... 3

*Tsering v. Meta Platforms*,
No. 25-cv-01611-RFL, 2026 U.S. Dist. LEXIS 113342 (N.D. Cal. May 21, 2026) ..................... 11

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611-RFL, 2026 U.S. Dist. LEXIS 5762 (N.D. Cal. Jan. 12, 2026) ......................... 15

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) ..................... 13

*Warden v. Kahn*,
99 Cal.App.3d 805 (1979).................... 10

*Wiley v. Universal Music Grp. Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) .................... 12

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F.Supp.3d 1139 (E.D. Cal. 2025).................... 5

*Yoon v. Lululemon USA, Inc.*,
549 F.Supp.3d 1073 (C.D. Cal. 2021) .......... 5

**Statutes**

Cal Penal Code § 631(a) .......... 8, 10
Cal. Penal Code § 631 .......... 10
Cal. Penal Code § 638.50(b) .......... 10, 11
Cal. Penal Code § 638.51(a) .......... 10

**Rules**

Fed. R. Civ. P. 9(b) .......... 12, 13

## I. INTRODUCTION

As companies develop increasingly invasive and integrated means of extracting and aggregating data from consumers' internet activity, consumers often rely on a website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendant FCA US, LLC ("Defendant" or "FCA") promised to visitors of its website was a lie. When consumers, including Plaintiffs, accessed FCA's Websites, they were presented with a cookie consent banner that promised users they could adjust their "Cookie Settings" to opt out of all third party cookies—small text files that, when attached to a user's browser or device, enable third parties to track the user and collect their personal and privacy communications in real time.

Selecting "Cookie Settings" and opting out of all third party cookies, however, meant nothing. Instead, FCA intentionally programed its website to unlawfully allow third parties to place non-essential third-party tracking cookies on the devices of Plaintiffs and every other visitor to the Websites before and after Plaintiffs and many users explicitly rejected all such cookies. As a result, FCA enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their explicit consent. Class Action Compl., ECF No. 1 ("Compl.") ¶¶ 3–4.

Plaintiffs bring the instant action to hold FCA accountable for this highly offensive invasion of their privacy and to stop it from engaging in this unlawful conduct. FCA now moves to dismiss, distorting the basic allegations of the Complaint to claim that Plaintiffs lack standing and have not adequately alleged their claims. *See, generally*, ECF No. 20 ("Mot."). Each argument lacks merit.

## II. FACTUAL BACKGROUND

When consumers, including Plaintiffs, visited the Websites—www.jeep.com, www.dodge.com, www.chrysler.com, www.fiatusa.com, www.ramtrucks.com, www.alfaromeousa.com, www.mopar.com, and www.stellantisfleet.com (the "Websites")—the Websites immediately displayed a popup cookie consent banner. The cookie consent banner stated, "We use first and third-party cookies to optimize site functionality, enhance the user experience, personalize content and ads, and provide social media and other third-party features." The banner then purported to provide users

the opportunity to adjust their "Cookie Settings" as shown in the following example screenshot:




Compl. ¶ 1.

When Plaintiffs and other uses of the Websites clicked or selected the "Cookie Settings" link, they were then presented with FCA's "Cookie Settings" window. There, FCA further represented that Plaintiffs and other California users "can chose to opt out of all third-party cookies on our Site, other than those that are "necessary," as shown below. *Id.* ¶ 41.




Plaintiffs and other Website users who adjusted the available toggle buttons or settings to disable or reject all cookies, including all categories of Performance Cookies, Functional Cookies,

Targeting Cookies, and Social Media Cookies (except those cookies "Essential" for the Websites to function), thereby indicating their choice and/or agreement to decline or reject all non-essential cookies and tracking technologies in use on the Websites, could then continue to browse the Websites after clicking or selecting the "Confirm My Choices" button, as the popup cookie consent banner and Cookies Preferences window disappeared. Compl. ¶ 43.

FCA's cookie consent banner and Cookie Preferences window led Plaintiffs, and all those users of the Websites similarly situated, to reasonably believe that they disabled or rejected all third party cookies other than those "Essential" to the Websites. The banner and Cookie Preferences window further reasonably led Plaintiffs and those Websites' users similarly situated to believe that FCA would not allow third parties, through cookies, to access their Private Communications with the Websites, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, as well as opt out of the sale of sharing of all user personal information. Compl. ¶ 44.

FCA's representations were false. FCA did not honor Plaintiffs' or other users' choices. Instead, FCA caused third party tracking cookies to be placed on the Websites' users' browsers and devices and/or transmitted to third parties, including Meta Platforms, Inc. (Facebook) (the "Third Parties") along with user data. Compl. ¶¶ 47–50. Contrary to its promises, FCA knowingly enabled the Third Parties to collect user data in real time that discloses the Websites' visitors' Private Communications, including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. *Id.*

## III. ARGUMENT

### A. Plaintiffs Have Standing to Assert Their Claims.

Invasions of privacy have long been recognized at common-law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983

(9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article III standing. *Davis v. Facebook, Inc.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("*In re Facebook*") ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

FCA invaded Plaintiffs' privacy—causing them a concrete injury—when FCA intentionally caused the Third Parties to place cookies on Plaintiffs' devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. Compl. ¶¶ 33–34, 47–50, 53–75, 145. This is a concrete injury sufficient to establish Plaintiffs' Article III standing.

Nearly every court in this District to consider similar allegations has agreed that where a defendant offers the ability to reject cookies that cause the sharing of users' private information and then places those cookies anyway, the invasion of privacy is sufficiently concrete to confer standing. *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *27 (N.D. Cal. July 14, 2025) ("*Motorola*"); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 868 (N.D. Cal. 2025) ("*Haleon*"); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 918 (N.D. Cal. 2026) ("*MyFitnessPal*"); *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 935 (N.D. Cal. 2026) ("*Smith & Wesson*"); *Shah v. Politico LLC*, 2026 U.S. Dist. LEXIS 25740, at *13 (N.D. Cal. Feb. 6, 2026) ("*Politico*"); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *15–16 (N.D. Cal. Nov. 24, 2025) ("*Rest. Brands Int'l*"). In doing so, the courts in this District have considered and rejected similar attempts to invoke *Popa v. Microsoft Corp*, 153 F.4th 784, 786–87 (9th Cir. 2025), noting that the tracking technologies at issue "are . . . distinguishable, both in users' interactions with them and their capabilities" and "*Popa* never purported to have expressly 'reject[ed]' the tracking technology at issue." *Haleon*, 815 F. Supp. 3d at 867.

The cases FCA points to are inapposite. In *Magliocca v. United Healthcare Servs.*, there was no affirmative misrepresentation that the plaintiffs' data would remain private and there were no allegations that the data collection went beyond a single website. 2026 U.S. Dist. LEXIS 70273, at *8–9 (E.D. Cal. Mar. 30, 2026). Here, in contrast, FCA affirmatively represented that Plaintiffs' data

would not be collected by third parties (a lie) and Plaintiffs allege that the cookies FCA caused to be attached allowed the Third Parties to track Plaintiffs and other uses across different websites and browsing sessions. Compl. ¶ 5, 40–50, 53, 74. *Wooten v. BioLife Plasma Servs. L.P.*, 807 F.Supp.3d 1139, 1145 (E.D. Cal. 2025) and *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1086 (C.D. Cal. 2021) are distinguishable on the same basis. And the court in *Wooten* even noted that cases like this one are distinguishable from those in which courts have found a lack of standing. *Wooten,* 807 F.Supp.3d. at 1145 n.4 ("The other cases plaintiffs cite are also distinguishable from this case. While several of them involve the collection of an IP address or an email address, the information collected in those cases always included something more. *See Gabrielli v. Haleon US Inc*., 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (finding standing where cookies allegedly tracked "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, [and] referring URLs . . .").

*Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850–51 (N.D. Cal. 2025) and *Sisti v. Bosley Inc*., 2026 U.S. Dist. LEXIS 105590, at *7 (C.D. Cal. Apr. 27, 2026) are no better. In each of those cases, plaintiffs failed to allege that their data was actually transmitted to third parties. *See Mitchener*, 815 F. Supp. 3d at 850–51; *Sisti*, 2026 U.S. Dist. LEXIS 105590, at *7. Here, by contrast, Plaintiffs allege that their data was in fact transmitted to third parties. Compl. ¶¶ 33, 47, 104–05, 115–16, 128–29. Thus, Plaintiffs have standing.

### B. FCA's 12(b)(6) Arguments Fail.

#### 1. Plaintiffs adequately plead claims for common law invasion of privacy and intrusion upon seclusion.

Claims for common law invasion of privacy and intrusion upon seclusion require (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 601; *see also Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 286–87 (2009). Several courts in this District have rejected the arguments made by FCA in similar contexts. *See, e.g.*, *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27; *Haleon*, 815 F. Supp. 3d at 868; *MyFitnessPal*, 824 F. Supp. 3d at 913; *Smith & Wesson*, 820 F. Supp. 3d at 935; *Politico*, 2026 U.S. Dist. LEXIS 25740, at *13; *Rest. Brands Int'l*, 2025 U.S. Dist. LEXIS 230964, at *15–16.

The reason courts consistently find similar allegations sufficient to state a claim is that the conduct alleged here is a textbook example of an invasion of privacy: FCA promised Plaintiffs that they could "opt out of all third-party cookies on our Site, other than those that are 'necessary,'" but then immediately placed cookies on their devices and browsers anyway, and enabled third-parties to collect broad swaths of data that users like Plaintiffs asked to keep private. *See Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

**i. Plaintiffs allege a reasonable expectation of privacy.**

Plaintiffs had a reasonable expectation of privacy in their private communications on the Websites because FCA promised them that their browsing activity and Private Communications would remain private if they so chose. *In re Facebook*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy can arise if users decline consent to tracking). FCA does not contest that it promised Plaintiffs they could opt out of cookies yet at the same time claims that Plaintiffs had no reasonable expectation of privacy. Mot. at 6–7. The fact FCA is arguing that Plaintiffs should not have expected privacy even when it promised them privacy should not be ignored. Indeed, the manner in which the data was collected is significant. *In re Facebook*, 956 F.3d at 603–04 (a reasonable expectation of privacy can arise if users decline consent to tracking, if FCA makes an affirmative statement that users' information would not be collected, and/or if the nature of the information collected is sensitive (such as browsing history correlated with additional personal information)); *MyFitnessPal*, 824 F. Supp. 3d at 914 ("Considering both MFP's affirmative representation that users could opt out of the tracking at issue here and the CCPA, the 'customs, practices, and circumstances' surrounding plaintiffs' visits to MFP's website gave them a reasonable expectation of privacy with respect to the data whose collection MFP allegedly facilitated."). FCA tricked Plaintiffs into believing that their browsing would be private through misrepresentation and deceit—violating social norms. The suggestion that Plaintiffs had no reasonable expectation of privacy when FCA told them to expect privacy asks this Court to believe

that lies and deceit do not violate social norms. This Court should reject such a cynical position. FCA's citation to *Popa* is distinguishable for the reasons discuss above. And its citation to *Hubbard v. Google LLC* ignores that the court there explicitly distinguished between situations involving routine commercial behavior and those "involving secret or deceptive data collection." 2024 U.S. Dist. LEXIS 117876, at *22–24 (N.D. Cal. July 1, 2024).

**ii. FCA's intrusion is highly offensive.**

Likewise, Plaintiffs have shown that FCA's intrusion was highly offensive. "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 606 (citation omitted). Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Haleon*, 815 F. Supp. 3d at 868 (agreeing with *Motorola*); *In re Facebook*, 956 F.3d at 606 (stressing the uniquely subjective nature of the highly offensive inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *28 ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to Facebook"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"). Here, the jury must consider all of the circumstances around FCA's conduct, including the fact that it lied about not tracking visitors, to determine whether the invasion of privacy was highly offensive.

Despite FCA's characterization of its conduct as routine commercial behavior, promising consumers one thing and doing the opposite can hardly be described as "routine," especially when it comes to sharing users' private communications with third parties. Courts by and large hold that such

conduct is a highly offensive invasion of privacy. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "FCA's representations that sensitive information would not be disclosed" made the disclosure highly offensive) *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27; *Haleon*, 815 F. Supp. 3d at 868; *MyFitnessPal*, 824 F. Supp. 3d at 917; *Smith & Wesson*, 820 F. Supp. 3d at 935; *Politico*, 2026 U.S. Dist. LEXIS 25740, at *13; *Rest. Brands Int'l*, 2025 U.S. Dist. LEXIS 230964, at *15–16. And, as discussed below, FCA intended to collect the information even after users rejected cookies. *See infra* B.2, D.

FCA concedes that use of "trackers that continue to monitor and report users' browsing activities after they have left the defendant's website" would be highly offensive. Mot. at 7. Plaintiffs allege just that, explaining that the "third-party cookies cause Third Parties to track users' behavior across the Internet and across time." Compl. ¶ 51. Plaintiffs data was collected, "creating consumer profiles containing detailed information" to "target those users with advertisements tailored to their consumer profiles and audience segments." *See id.* ¶¶ 5, 51. District courts recognize this mass accumulation of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive.").

Accordingly, considering all the circumstances around FCA's conduct, including the fact that it lied about not tracking visitors, Plaintiffs have alleged an invasion of privacy that, considering the context of the intrusion—a false promise of privacy—is highly offensive.

**2. Plaintiffs Plead Their Wiretapping Claims Under CIPA § 631(a).**

The fourth clause of Section 631(a) makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (cleaned up). FCA knowingly integrated its Websites with code that causes the Third Parties to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties."

Compl. ¶¶ 28–29, 37, 52. These cookies transmit communications that third parties intercept and read in real time. *See, e.g.*, *id*. ¶¶ 76–87.

FCA argues that Plaintiffs have not adequately pleaded intent, relying primarily on this Court's decision in *Smith v. Yeti Coolers, LLC*, 754 F. Supp. 3d 933, 943–44 (N.D. Cal. Oct. 21, 2024). Mot. at 9–10. FCA's reliance on *Yeti*, however, is misplaced. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. *Yeti*, 754 F. Supp. 3d at 938. This Court concluded that the plaintiff failed to allege that the FCA was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at 942. In other words, the FCA did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Plaintiffs have alleged that FCA integrated the third-party resources on the Websites which placed and transmitted cookies *in order* to obtain user data for advertising purposes. Compl. ¶¶ 28–29, 37, 52; *see also id.* ¶ 38 ("We and these third-party ad companies use this information to provide you more relevant ads and content within our Services and on third-party sites and services, as well as to improve and evaluate the success of such ads and content."). FCA programmed the Websites with the Third Party code and did not disable this software or prevent the Third Parties from obtaining user data even after it obtained users' rejection of cookies. *Id.* FCA cannot claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Personal Communications since it integrated the Third Party code into its Website to do exactly that.

Moreover, FCA's interpretation of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The FCA in *Yeti*, like FCA does here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" 754 F. Supp. 3d at 942. But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting . . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). *Cf.* Mot. at 11 citing *Esparza v. UAG Escondido A1 Inc.*, 2025 WL 559241, at *6 (S.D. Cal.

Feb. 12, 2924) (applied common law rather than wiretapping standards).[1] Here, Plaintiffs allege more than "some" level of intent and knowledge (as explained herein) because FCA owns the Websites and installed the third-party resources which allowed the Third Parties to track the Website users.

FCA's argument that it cannot be liable because it is a "party to the communication" is specious. Plaintiffs are pursuing the fourth prong of CIPA because FCA aided and abetted *Third Parties'* interception of communications. Whether FCA was the intended recipient of the communication does not absolve it of liability here. *See Gutierrez v. Converse Inc.*, 2023 U.S. Dist. LEXIS 231056, at *7 (C.D. Cal. Oct. 27, 2023) (finding plaintiff stated a claim for aiding and abetting where FCA was intended party to the communication); *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *29 (rejecting argument that FCA cannot eavesdrop on its communications). CIPA itself makes clear that no such party exception exists: the statute penalizes "any person" from learning the contents of the communication "without the consent of all parties to the communication." Cal. Penal Code § 631(a). Here, Plaintiffs explicitly rejected sharing their communications and therefore did not give consent. FCA's cases are also distinguishable. *Warden v. Kahn*, 99 Cal.App.3d 805, 811 (1979) held that § 631 applies to eavesdropping by a third party, not to recording of a conversation by a participant to that conversation. Here, the Third Parties did the eavesdropping—i.e., the third party cookies caused the interception of communication such that the Third Parties received the communication. Plaintiffs do not challenge FCA's use of first party cookies.

### C. Plaintiffs Sufficiently Allege Their Pen Register Claims.

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs allege that the Third Parties' cookies installed by FCA's software code that cause the Third Parties to attach cookies operate as "pen registers" because they are processes that record the signaling and addressing information,

[1] FCA also cites *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) for the premise that intent allegations are insufficient. However, there the court dismissed the CIPA claims for failure to plead an underlying violation of CIPA by a third party, not because of a lack of intent.

including TCP and/or UDP port numbers, TCP connections, HTTP request header metadata, and network-level and transport-level routing and addressing metadata associated with communications, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites. Compl. ¶¶ 88–91.

FCA argues that because Plaintiffs allege that certain third party cookies also tracked contents of communications, they cannot also plead that certain third party cookies operated as pen registers under § 638.50(b). *See* Mot. at 21–22. Not so. Again, this argument has been considered and rejected. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025). FCA's reliance on *Tsering* is similarly distinguishable. There, this Court dismissed plaintiff's claims for failing to allege that geolocation and IP addresses were used for dialing and routing "rather than the contents of the communication at issue." *Tsering v. Meta Platforms*, 2026 U.S. Dist. LEXIS 113342, at *5 (N.D. Cal. May 21, 2026). Here, Plaintiffs plead this distinction at length. *See*, *e.g*., Compl. ¶ 26 (the IP address in the HTTP request "allows the Website server to identify the origin of the request and return the response"); ¶ 91 (Third Parties use the routing/addressing metadata "in real time to identify and log the origin and destination endpoints … and the characteristics of those connections"); ¶¶ 88–90 (port numbers "direct traffic to specific software processes"; Host header "function[s] as digital 'dialing' information").

Nothing that FCA cites states that simply because a device can function both as a wiretap (a device that intercepts communications) and a pen register (a device that captures address information but not communications) that the device is not a pen register. Preliminarily, the Complaint alleges that the Third Parties attached several different cookies to Plaintiffs' devices and browsers, which collected different data sets. *See, e.g.*, Compl. ¶¶ 53–75 (identifying and describing a variety of cookies, including ones that transmits a user's IP address and others that transmit contents). Moreover, it would do poor service to the broad language of the statute to prevent liability simply because a device is sophisticated enough to do both. *See*, *e.g.*, *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ("If the various functionalities within the Meta Pixel operate independently from one another, as plaintiffs plausibly allege, the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users'

communications.”); *MyFitnessPal*, 824 F. Supp. 3d at 920 (applying *In re Meta Pixel* to reject argument that cookies that collect both contents and signaling information cannot be pen registers); *Wiley v. Universal Music Grp. Inc.*, 826 F. Supp. 3d 1121, 1137 (N.D. Cal. 2025) (same); *Haleon*, 815 F. Supp. 3d. at 872 (same); *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *50 (“Some of these data may be contents, while others may not be. Plaintiffs are permitted to plead both causes of action and rely on different cookies—transmitting different data—to support each cause of action.”); *Ayora v. Inspire Brands, Inc.*, 2026 U.S. Dist. LEXIS 126682, at *17 (plaintiffs alleged “dialing, routing, addressing, and signaling information” where “Plaintiffs allege that their IP addresses were tracked”).

**D. Plaintiffs Adequately Plead Fraud Under Rule 9(b).**

“Rule 9(b) to require[s] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.” *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (quotation marks omitted). “Malice, intent, knowledge and other conditions of a person’s mind may be alleged generally.” Fed. R. Civ. P. 9(b). Here, FCA challenges only Plaintiffs allegations regarding knowledge, when the fraud occurred, and damages.

First, Plaintiffs sufficiently plead that FCA acted with scienter. To satisfy the requirement of scienter, California law requires “either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant.” *Harper v. Silver*, 200 Cal. App. 2d 103, 108 (1962). Plaintiffs allege that FCA “caused third-party cookies and software code to be stored on users’ devices, and to be transmitted to the Third Parties alongside Private Communications, even after users adjusted settings and/or toggle switches on the Cookie Settings window to opt out of or reject all non-essential cookies on the Websites.” Compl. ¶ 194–95. FCA affirmatively chose to deploy a cookie consent banner governing the collection, sharing, and use of users’ Private Communications on the Website, and by doing so undertook responsibility for ensuring that the banner accurately communicated users’ privacy choices and properly effectuated those choices. FCA benefited from the data that was obtained post rejection and had access to the data.

That is to say, Plaintiffs allege FCAs' direct knowledge of the misrepresentation. FCA had the ability to audit its banner and was obligated to do so. Thus, FCA either had actual knowledge that its representations were false, or that the statements were "carelessly and recklessly made, in a manner not warranted by the information available to FCA." *Harper*, 200 Cal. App. 2d at 108; *see also Doe v. Xytex Corp*., 2017 U.S. Dist. LEXIS 43623, at *14–15 (N.D. Cal. Mar. 24, 2017) (allegations that FCA had access to information revealing the falsity of its representations sufficient to allege scienter).

FCA invokes this Court's recent decision in *Ortiz v. Deckers Outdoor Corp*., 2026 U.S. Dist. LEXIS 100845 (N.D. Cal. May 6, 2026) to argue that Plaintiff fails to allege that FCA "knew its representations that users could disable non-essential cookies and opt out of their information being shared were false." Mot. at 14. Beyond the fact that the data available to FCA did not warrant its continued representation that users could reject cookies, the complaint also alleges that FCA received a presuit letter on February 9, 2024, telling FCA in writing that its cookie banner did not work. Compl. ¶ 17. Despite receiving this letter, "FCA did not disclose this conduct to users or modify its representations in the Website's cookie banner or Privacy Preference Center that users could reject such data sharing." *Id*.

Second, Plaintiffs have adequately pleaded when they visited the Websites by alleging they visited in the last four years.[2] Accordingly, Plaintiffs' allegations are sufficient "to give FCAs notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge," *Brown*, 2022 U.S. Dist. LEXIS 42760, at *7 (quotation marks omitted); *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *21–22; *accord Haleon*, 815 F. Supp. 3d at 873 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now.").[3]

Finally, FCA claims that Plaintiffs provide only conclusory allegations of damages. Mot. at 14. But Plaintiffs specifically pled the harm suffered. Compl. ¶¶ 92-97, 201–03. Here, Plaintiffs have

---

[2] Plaintiffs acknowledge that this Court has found that similar allegations do not sufficiently plead the "when" of the fraud but respectfully request the Court reconsider its prior holding.

[3] Other courts have reached the same conclusion in similar cookie-banner fraud cases. *See Rest. Brands Int'l*, 2025 U.S. Dist. LEXIS 230964, at *22 (quoting *Motorola*, and "finding similar allegations sufficient" to survive a 9(b) challenge); *Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *57 (N.D. Cal. Oct. 16, 2025) ("Plaintiffs proffer the who, what, when, where and how in their Opposition, citing to portions of the Complaint" in a reject-all cookies case); *Casillas v. Six Flags Ent. Corp*., 812 F. Supp. 3d 1016, 1035 (C.D. Cal. 2025) ("Therefore, the FAC sufficiently pleads what alleged data is being sent to whom for Plaintiff's fraud claim.").

identified several theories of recovery. *Id.*; *see Rodriguez v. Google LLC*, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also In re Facebook*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

Regarding damages, Plaintiffs are not limited to out-of-pocket expenses, but may seek compensatory damages for any type of harm, as well as punitive damages. *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018) (holding "the appropriate measure of damages is defined by Civil Code sections 1709 and 3333," which provide broad relief for any harm). Plaintiffs allege that they were fraudulently induced to use FCAs' Websites and to disclose valuable personal information based on FCA's representation that they would not be tracked. Compl. ¶¶ 193, 200–01. As a result, FCA collected and transmitted Plaintiffs' information for commercial purposes, depriving Plaintiffs of control of that valuable and private data. *Id.* ¶¶ 197–98; *see also id*. ¶¶ 93–94, 97, 145. Had Plaintiffs known the truth, they "would not have used the Website or, at a minimum, . . . would have interacted with the website differently." *Id.* ¶ 106, 117, 130. As several courts have held, those allegations are sufficient at the pleading stage to establish actual damages. *See*, *e.g.*, *Haleon*, 815 F. Supp. 3d at 873; *Politico*, 2026 U.S. Dist. LEXIS 25740, at *20; *Rest. Brands Int'l*, 2025 U.S. Dist. LEXIS 230964, at *22.

**E. Plaintiffs Have Adequately Pleaded Unjust Enrichment.**

To plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs allege that FCA profited from the use of their Private Communications. Compl. ¶¶ 93–97 (describing ways in which FCA benefited from the use of cookies).

FCA argues that Plaintiffs' unjust enrichment claim fails because they do not allege a lack an adequate remedy at law. This argument is mistaken. Plaintiffs seek disgorgement of profits as a remedy for their unjust enrichment claim, an equitable remedy not available at law. Compl. ¶¶ 205, 207–13; *id.*, Prayer for Relief ¶¶ E–F. Any damages Plaintiffs may recover as a legal remedy will be insufficient because FCA monetized Plaintiffs' data in ways that do not involve Plaintiffs, rendering them

otherwise unrecoverable. *Id.* ¶¶ 92–94. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

FCA also argue that Plaintiffs' claims fail because they are based on the same allegations as Plaintiffs' CIPA claims, which it argues also fail. Mot. at 15 (citing *Tsering v. Meta Platforms, Inc.*, 2026 U.S. Dist. LEXIS 5762, at *23 (N.D. Cal. Jan. 12, 2026) ("*Tsering I*")). In *Tsering I*, however, this Court found that plaintiffs' unjust enrichment claims failed because plaintiffs had failed to allege *any* unlawful conduct, not just CIPA violations. Plaintiffs have, of course, adequately pleaded their CIPA claims. But in the event Plaintiffs CIPA claims fail but Plaintiffs' other claims proceed, *Tsering I* does not support dismissal of Plaintiffs' unjust enrichment claim.

## IV. CONCLUSION

For the foregoing reasons, FCA's motion to dismiss and motion stay should be denied. Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

Dated: August 4, 2026

**GUTRIDE SAFIER LLP**

*/s/ Hayley Reynolds*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111

*Attorneys for Plaintiffs*