Kristyn Wong (346644)
kristyn.wong@kleinthomaslaw.com
**KLEIN THOMAS LEE & FRESARD**
1920 Main Street, Suite 230
Irvine, California 92614
Tel: (949) 676-4570

Thomas L. Azar, Jr. (admitted *Pro Hac Vice*)
tom.azar@kleinthomaslaw.com
Sarah K. Molina (admitted *Pro Hac Vice*)
sarah.molina@kleinthomaslaw.com
**KLEIN THOMAS LEE & FRESARD**
100 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Tel: (314) 888-2970

*Attorneys for Defendant FCA US LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN BELTRAN, PAUL GIOFFRE and TERRY DEAN MYERS, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US, LLC dba STELLANTIS NORTH AMERICA, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.: 3:26-cv-03899-RFL**<br><br>**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Action Filed: May 1, 2026<br><br>**DATE:** Tuesday, September 15, 2026<br>**TIME:** 10:00 a.m.<br>**JUDGE:** Hon. Rita F. Lin<br>**COURTROOM:** 15 |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Dismissal Is Required For Lack Of Standing. ..... 1

B. The Privacy Claims Fail (Counts I & II). ..... 3

C. The CIPA Claims Fail (Counts III & IV). ..... 5

a. The CIPA § 631(a) Claim Fails (Count III). ..... 5

b. The CIPA § 638.51 Pen Register Claim Fails (Count IV). ..... 6

D. The Fraud Claim Fails (Count V). ..... 7

E. The Unjust Enrichment Claim Fails (Count VI). ..... 8

V. CONCLUSION ..... 8

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Blalock v. FCA US, LLC*,
2026 WL 2364789 (C.D. Cal. Aug. 14, 2026) ........ 5

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 5

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ........ 4

*Dawson v. Meta Platforms, Inc.*,
2026 WL 2137134 (N.D. Cal. July 23, 2026) ........ 3

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 1, 4

*Lau v. Gen Digital Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........ 7

*Mitchener v. CuriosityStream, Inc.*,
815 F.Supp.3d 845 (N.D. Cal. 2025) ........ 2

*Ortiz v. Deckers Outdoor Corp.*,
2026 WL 1243675 (N.D. Cal. May 6, 2026) ........ 7

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) ........ 2

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 1, 3

*Price v. Converse, Inc.*,
805 F.Supp.3d 1102 (C.D. Cal. 2025) ........ 5

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........ 7

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ........ 5

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) ........ 5

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 2

*Torres v. Seatgeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1

*Tsering v. Meta Platforms, Inc.*,
2026 WL 1433958 (N.D. Cal. May 21, 2026) .......... 7

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 4

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 6

**Statutes**

Cal. Pen. Code § 631(a) .......... 5

Cal. Pen. Code § 638.50(b) .......... 6

## I. INTRODUCTION

Plaintiff Terry Dean Myers has effectively conceded FCA US LLC's motion to compel arbitration by voluntarily dismissing his claims rather than responding. *See*, *generally*, ECF #19 (motion to compel); ECF #25 (Myers' voluntary dismissal). This leaves Plaintiff Martin Beltran's claims regarding his visit to the Dodge website and Plaintiff Paul Gioffre's claims regarding his visit to the Jeep website at some unspecified times – *i.e.*, "on one or more occasions during the last four years." *See* Comp. ¶¶ 98, 108. These Plaintiffs argue their deliberately vague "information and belief" allegations are enough to demonstrate their standing and plead viable claims. *See*, *generally*, Pls.' Opp. to FCA's Motion to Dismiss Pls.' Class Action Comp. ("Pl. Opp."), ECF #24; *see also* Comp. p. 3 (explaining all allegations "except for allegations specifically pertaining to Plaintiffs" are lodged "based on information and belief"). Because they are not, dismissal of the remaining claims asserted by Beltran and Gioffre is required.

## II. ARGUMENT

### A. Dismissal Is Required For Lack Of Standing.

Plaintiffs offer two arguments in support of their standing. First, they cite *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), for the proposition that "violations of CIPA suffice to confer Article III standing." *See* Pl. Opp., p. 4. Yet, that holding predates the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which rejected the notion mere violations of a statute suffice for standing. *See id.* at 427. Indeed, the Ninth Circuit subsequently confirmed an actual concrete injury is required, even where a statutory violation is alleged, in *Popa v. Microsoft Corp.*, 153 F.4th 784, 792-94 (9th Cir. 2025) (affirming dismissal for lack of standing and distinguishing *In re Facebook* and other pre-*TransUnion* cases). So, the mere fact that Plaintiffs allege a CIPA violation is obviously not enough for standing.

Second, Plaintiffs argue they have adequately pleaded standing because FCA US "lie[d]" to them in its website privacy banners about what information would be collected and shared. *See* Pl. Opp., pp. 4-5. Based on this purported "lie," they argue they have standing even though they apparently concede the type of information allegedly collected (*e.g.*, what pages were viewed, the date and time of the visit, *etc.*) was decidedly non-private. *Id.*; *see also* Comp. ¶¶ 33, 50. But, at

the pleadings stage, it is well-settled that every plaintiff "bears the burden of clearly alleging facts" demonstrating his or her standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted and cleaned up); *see also Mitchener v. CuriosityStream, Inc.*, 815 F.Supp.3d 845, 851 (N.D. Cal. 2025) ("Plaintiff cannot establish constitutional standing based on conclusory statements." (quotation omitted)). And, here, Plaintiffs have failed to plead the factual content required to plausibly allege standing.

To start, Plaintiffs deliberately avoid pleading even generally when their own website visits occurred beyond saying they occurred sometime "during the last four years." *See* Comp. ¶¶ 98, 108. This deliberate lack of factual detail is particularly crucial since (1) nothing is pleaded to suggest the websites, their pop-up banners, and the statements in those banners remained unchanged over such a lengthy period of time and (2) Plaintiffs' entire standing argument hinges on their seeing some purported "lie" in whatever the banner said at the time of their visits. *See Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, *8 (N.D. Cal. May 21, 2026) (noting that "[f]our years is a broad enough span of time that Defendant's website – including its popups and cookie practices – may have been materially different at different times"). Indeed, Plaintiffs themselves acknowledge that websites "change over time." *See, e.g.*, Comp. ¶ 107.

Plaintiffs also fall short in pleading the existence of the purported "lie." They allege cookies were installed "[e]ven ***before*** the popup cookie consent banner or Cookie Settings window appeared on the screen." *See* Comp. ¶¶ 104, 115 (emphasis added)). But, logically, this cannot support any standing argument or privacy injury that is based on being told a "lie" in the cookie banner/settings window about how cookies would operate in the future. While Plaintiffs each proffer essentially identical averments that cookies were also installed after they interacted with the banner, these allegations are not just conclusory, but Plaintiffs affirmatively disclaim any ability to know (1) what cookies were used; (2) what any cookies did; (3) whether those cookies collected or shared any information; or (4) for any cookie, whether it was installed before or after the popup banner was interacted with. *See id.* at ¶¶ 107, 118 (each Plaintiff pleading they lacked the information, expertise, or tools to determine any details about any cookies installed on their own computers whenever they visited the websites); *see also id.* at ¶¶ 104, 116.

What Plaintiffs offer instead are "example" screenshots of the Cookie Settings interface and "example" screenshots of tools purporting to show "network transmissions" on the websites. *See id.* at ¶¶ 41-42, 48, 54. Yet, since the actual dates of Plaintiffs' own visits remain a mystery (beyond occurring sometime in the last "four years"), there is nothing to plausibly suggest these screenshots are indicative of anything Plaintiffs could have seen or experienced. And, the screenshots purporting to show cookies are also devoid of information showing what any cookie is actually doing, making it even more implausible that whatever was included on the websites' cookie banners was a "lie" at the time of their visits.

All that can be said for certain based on the Plaintiffs' allegations is that they are suing over the collection of the same types of information that the Ninth Circuit has held do ***not*** implicate any privacy interest. *See Popa*, 153 F.4th at 791-92. Thus, the Court should dismiss the remaining Plaintiffs' claims for lack of standing.

**B. The Privacy Claims Fail (Counts I & II).**

Plaintiffs do not argue the type of information allegedly collected and shared involves any sensitive or private information. *See* Pl. Opp., pp. 5-8. Rather, they simply argue they have sufficiently pleaded the "privacy interest" and "egregious breach"/"highly offensive" elements of their invasion of privacy and intrusion upon seclusion claims because, they say, FCA US committed fraud by "promising one thing" in its cookie popup banner and "doing another." *Id.* But, if that is the crux of their claims, they would obviously have needed to plead this purported fraud with the specificity Rule 9(b) requires, as this Court recently explained. *See, e.g.*, *Dawson v. Meta Platforms, Inc.*, 2026 WL 2137134, *5 (N.D. Cal. July 23, 2026) (holding allegations defendant "willfully misrepresent[ed]" information regarding the operation of its app are governed by Rule 9(b), and dismissing or disregarding allegations where required specificity was lacking). Here, Plaintiffs do not make a good-faith effort to plead when their own visits occurred, even as they acknowledge whatever "promises" a website makes would change over time. *See* Comp. ¶¶ 98, 107-08. This falls short of the requirements of Rule 8(a), and comes nowhere close to satisfying Rule 9(b). On this basis alone, dismissal is required.

Plaintiffs also argue they have adequately pleaded the "egregious breach" and "highly offensive" elements because they allege FCA US "intended to collect the information even after users rejected cookies." *See* Pl. Opp., p. 8. But, as this Court held in *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, *7 (N.D. Cal. Jan. 12, 2026), rote allegations a defendant's conduct was knowing or intentional are insufficient to plead any plausible privacy claim. Plaintiffs do not, and cannot, cite any actual facts from the complaint to support their argument FCA US acted intentionally or knowingly. *See*, *generally*, Pl. Opp.; *see also* Comp. ¶ 195 (simply alleging FCA US "knew, or should have known" how the third-party cookies operated, but no facts to support any intentional or knowing misconduct). For this reason too, dismissal is required.

Finally, Plaintiffs cite two paragraphs (¶¶ 5, 51) in their complaint and argue they render this case akin to the type of tracking at issue in *In re Facebook*, or cases involving widespread collection and creation of consumer profiles. *See* Pl. Opp., p. 8. But, *In re Facebook* involved software that tracked ***every single website a user visited across the internet, even after they logged off Facebook,*** and combined that with detailed information about things like employment history, religion, and political affiliation from their profiles. *See* 965 F.3d at 589-99. Nothing remotely similar is alleged here. *See* Comp. ¶¶ 5, 51 (simply alleging software collects information about Plaintiffs' activities "on the Websites," and shares that with third parties which "combine" it with data from other sources). Courts overwhelmingly agree that just sharing activity on one's own website with a third party does not even suffice to show standing, much less an actual privacy injury. *See, e.g.*, *Torres v. Seatgeek, Inc.*, 2026 WL 1495202, **3-4 (N.D. Cal. May 28, 2026) (no standing where information was allegedly shared with Meta and other third parties that maintained "preexisting plaintiff profiles" and "allegedly link[ed] the transmitted data … to those profiles through fingerprinting, advanced matching, and identifiers," since "the information that was collected – IP addresses, device make/model/OS, browser type, and cookie identifiers – is record information where there is no reasonable expectation of privacy"); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, **1, 3-4 (C.D. Cal. Dec. 29, 2025) (no privacy injury for standing where defendant's website included trackers "by Google, Twitter, and StackAdapt" which "caused the user's browser to transmit certain data to third-party servers only when the user visited Defendant's website");

*Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, **5-6 (S.D. Cal. Nov. 12, 2025) (while plaintiffs alleged "Microsoft and TikTok combine this information with data from other sources to generate user profiles," finding no standing since the trackers on defendant's website only collected non-private information like IP addresses and browsing activity on the site, explaining this "take[s] this case outside the holding of *Facebook*"); *Price v. Converse, Inc.*, 805 F.Supp.3d 1102, 1105 (C.D. Cal. 2025) (similar). Furthermore, just pleading that software on a website collects and shares data that could be used in creating a profile is not enough for a privacy injury – actual facts showing such a profile was created and that FCA US knew this would occur are required. *See, e.g.*, *Blalock v. FCA US, LLC*, 2026 WL 2364789, **4-5 (C.D. Cal. Aug. 14, 2026) (dismissing claims because plaintiffs failed to plead facts supporting such knowledge and intent, as well as "a connection between LiveRamp's de-anonymization process and FCA"). But, no such facts are pleaded here. *See*, *generally*, Comp.

**C. <u>The CIPA Claims Fail (Counts III & IV)</u>.**

a. <u>The CIPA § 631(a) Claim Fails (Count III).</u>

Plaintiffs seem to agree their CIPA claims can only be viable if brought under an aiding and abetting theory. *See* Pl. Opp., pp. 9-10 ("Plaintiffs are pursuing [their claim] because FCA aided and abetted ***Third Parties'*** interception of communications" (emphasis in original)). They also acknowledge this Court and others have held such a theory requires actual factual allegations showing knowledge and intent. *Id.*; *see also Smith v. YETI Coolers, LLC*, 2025 WL 877127, **1-2 (N.D. Cal. Mar. 14, 2025); *see also Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933, 942-43 (N.D. Cal. 2024) (aiding and abetting liability requires the defendant be "acting with the third party ***in order to*** have the third party perform acts that violate the statute," so "[a]t the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts" (emphasis in original)).

Plaintiffs argue they have pleaded knowledge/intent, but ignore their own allegations. *See* Pl. Opp., p. 9. That is because all they have pleaded here are bare conclusions FCA US "knew, or should have known" about the alleged failure of the cookie settings tool to operate properly and allow visitors to opt out of cookies. *See, e.g.*, Comp. ¶¶ 176, 195. Just pointing to allegations

FCA US knew its websites would be accessed in California (¶ 28), knew third-party tools were used on its website generally (¶¶ 29, 37), had a cookie policy (¶ 38), or general allegations about how the third-party cookies operate (¶ 52) fail to plead FCA US had the requisite knowledge or intent to act improperly or violate CIPA. *See* Pl. Opp., p. 9 (citing these allegations as basis for Plaintiffs' knowledge/intent claims). Thus, Count III should be dismissed.

b. The CIPA § 638.51 Pen Register Claim Fails (Count IV).

Plaintiffs argue a § 638.51 pen register violation can be pursued even the device/process at issue captures "contents," as long as it also captures non-content routing/addressing information. *See* Pl. Opp., pp. 10-12. Yet, that is exactly the opposite of what the pen register statute says. *See* Cal. Pen. Code § 638.50(b) (explicitly defining a "pen register" as a device/process that "records, or decides dialing, routing, addressing or signaling information … ***but not the contents of a communication***" (emphasis added)). Thus, courts routinely hold that where a device/process is alleged to capture contents, no violation of the pen register statute is alleged. *See* ECF #20, p. 12 (collecting cases). Certainly, a plaintiff could theoretically assert both a § 631(a) wiretapping claim and a § 638.51 pen register claim in the same case if they are based ***"on different cookies,"*** some of which capture contents (for the wiretapping claim) and others that do not (for the pen register claim). *See Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, *18 (N.D. Cal. Oct. 16, 2025) (emphasis added). But, that is not what Plaintiffs have alleged here. While they try to argue otherwise by citing a broad swath of their complaint (¶¶ 53-75), *see* Pl. Opp., p. 11, nowhere in those paragraphs do Plaintiffs ever identify any separate set of cookies that do not capture contents, and thus could at least potentially support a pen register claim. Instead, they explicitly plead that their claims are based on the ***same*** cookies which, they say, capture "contents" as well as non-content information. *See* Comp. ¶ 91; *see also id.* at ¶¶ 76, 85-86, 173-74. For this reason alone, their pen register claim in Count IV fails and should be dismissed.

In any event, FCA US also argued dismissal is independently required because Plaintiffs have failed to plead any facts showing their non-content "dialing, routing, addressing, or signaling information" ***was actually used*** "for other subsequent communications" to them. *See* ECF #20, p. 13 (quoting this Court's decision in *Tsering v. Meta Platforms, Inc.*, 2026 WL 1433958, *6 (N.D.

Cal. May 21, 2026)). While Plaintiffs mention *Tsering* in their brief, they fail to offer any substantive response to this argument, and thus have conceded dismissal.

**D. <u>The Fraud Claim Fails (Count V).</u>**

FCA US moved to dismiss Plaintiffs' fraud claim because they fail to plead any facts regarding knowledge/intent, fail to identify when their own website visits occurred (beyond saying it was sometime in the last "four years"), and fail to plead facts supporting the damages element of their claim. *See* ECF #20, pp. 13-14. On knowledge/intent, Plaintiffs argue this can be inferred based on allegations FCA US installed the third-party software on its website, and thus "undertook responsibility" for it, "benefitted from the data," and "had the ability to audit its banner." *See* Pl. Opp., pp. 12-13. But, no actual facts are pleaded, and this Court rejected similar allegations as insufficient in *Ortiz v. Deckers Outdoor Corp.*, 2026 WL 1243675, *2 (N.D. Cal. May 6, 2026). Plaintiffs also argue they have pleaded FCA US's knowledge based on a demand letter former Plaintiff Myers sent on February 9, 2024. *See* Pl. Opp., p. 13. Of course, since none of the Plaintiffs even plead ***when*** their own website visits occurred – much less that their visits occurred after the letter – this could never support a fraud claim. Plaintiffs acknowledge this Court held in *Ortiz* that simply pleading a website visit occurred "during the last four years" is totally insufficient to support any claim. *See* 2026 WL1243675, at *2; *see also* Pl. Opp., p. 13 fn.2.

On damages, Plaintiffs seem to agree they needed to plead this to support a fraud claim, but can cite nothing in the complaint supporting it. Instead, they just argue they have "identified several theories of recovery," "may seek compensatory damages," and point to allegations that they have suffered "the loss of money and/or property" or "diminution of the value of their private and personally identifiable information." *See* Pl. Opp., p. 14; *see also, e.g.*, Comp. ¶¶ 197-98. But, as this Court explained in *Lau v. Gen Digital Inc.*, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024), such rote and conclusory allegations are insufficient. *Id.* at *4 (dismissing claim because "the complaint does not allege facts supporting that the plaintiffs have not been able to capture the full value of their information"). Plaintiffs point to *Rodriguez v. Google LLC*, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024), but that case addressed class certification, not pleading sufficiency. At the pleadings stage, Plaintiffs need to plead more than abstract theories of harm – facts showing

an actual loss are required. Since such facts are missing, the fraud claim fails.

**E. <u>The Unjust Enrichment Claim Fails (Count VI)</u>.**

Plaintiffs argue they have adequately pleaded their unjust enrichment claim because it seeks different remedies (disgorgement) than their legal claims (damages). *See* Pl. Opp., pp. 14-15. But, as this Court has explained, stating a viable unjust enrichment claim requires pleaded facts showing damages would be an insufficient remedy. *See, e.g.*, *Gilligan v. Experian Data Corp.*, 2026 WL 32259, *4 (N.D. Cal. Jan. 6, 2026); *see also* ECF #20, p. 15 (collecting additional cases). Plaintiffs cite nothing in their complaint providing any facts to support this – instead, they just point to general averments about the alleged collection of their information (*see, e.g.*, Comp. ¶¶ 92-94), conclusory assertions that FCA US was "enriched" (¶¶ 205-13), or their prayer for relief. *See* Pl. Opp., pp. 14-15. None of this addresses ***inadequacy*** of damages as a remedy, as is required under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020).

Plaintiffs concede their unjust enrichment claim is properly dismissed if their other, overlapping claims fail. *See* Pl. Opp., p. 15. Since all of Plaintiffs' other claims are subject to dismissal for the reasons detailed herein and in FCA US's opening brief, the unjust enrichment claim should also be dismissed on this basis as well.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant FCA US LLC respectfully requests this Court dismiss Plaintiffs' complaint in its entirety.

August 25, 2026

**KLEIN THOMAS LEE & FRESARD**

By: <u>/s/ *Kristyn Wong*</u>

Kristyn Wong (346644)
kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, California 92614
Telephone: (949) 676-4570

Thomas L. Azar, Jr. (*admitted Pro Hac Vice*)
tom.azar@kleinthomaslaw.com
Sarah Molina (admitted *Pro Hac Vice*)
sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Telephone: (314) 888-2970

*Counsel for Defendant FCA US LLC*

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on **August 25, 2026**, a true and correct copy of the foregoing **FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** was filed with the Clerk using the CM/ECF system, which will provide notice to all the counsel of record.

Samie Long