UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN BELTRAN, et al.,<br>Plaintiffs,<br>v.<br>FCA US LLC,<br>Defendant. | Case No. 26-cv-03899-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Plaintiffs Martin Beltran and Paul Gioffre[1] filed this action against Defendant FCA US LLC alleging various privacy violations arising from Plaintiffs' use of FCA's ecommerce websites. (Dkt. No. 1 ("Compl.").) Plaintiffs allege that FCA's websites "include resources and programming scripts from third parties that cause those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data" even after users expressly opt out of such tracking. (*Id.* ¶¶ 2–6.) Plaintiffs bring claims for invasion of privacy and intrusion upon seclusion (Counts I–II); violations of the California Invasion of Privacy Act ("CIPA") under California Penal Code Sections 631 (wiretapping) and 638.51 (pen register) (Counts III–IV); common law fraud (Count V); and unjust enrichment (Count VI). FCA moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing, and under Rule 12(b)(6) for failure to state a claim. (Dkt. No. 20 ("Motion").) For the reasons explained below, the Motion is **GRANTED IN PART AND DENIED IN PART**. This order assumes the reader is familiar with the facts of the case, the applicable law, and the arguments made by the parties.

[1] Plaintiff Terry Dean Meyers has voluntarily dismissed his claims. (Dkt. No. 25.)

***Article III Standing***. Plaintiffs have adequately pled standing to pursue their claims.[2] The Complaint alleges that FCA's websites contain "substantially similar" representations regarding FCA's use of various categories of cookies and users' ability to opt out of those cookies. (Compl. ¶¶ 38–44.) Among the categories of cookies that the websites represent users can turn off are "Targeting Cookies" and "Social Media Cookies," which FCA states can otherwise be used by "our advertising partners" and "social media services" to "build a profile of your interests," and "track your browser across sites." (Compl. ¶ 42.) The websites also list "Essential Cookies" as "Always Active," and explain that "these cookies are necessary for the website to function and cannot be switched off." (*Id.*) Despite providing an opt-out option, FCA allegedly "continued to cause the placement and/or transmission of [third-party] cookies along with user data," through its websites after Plaintiffs opt out of cookies, allowing third parties to "track and collect" Plaintiffs' communications on the website, including for social media and advertising purposes. (*Id.* ¶¶ 105, 129.) Once collected by third parties, FCA allegedly can use the information to send targeted ads to users on its own websites and on other companies' websites. (*Id.* ¶¶ 93–94.)

Plaintiffs allege that they each visited one of FCA's websites and adjusted the toggle switch to "Opt-Out of Cookies" except for essential cookies. (*Id.* ¶¶ 98, 101–02, 108–10, 113.) Despite Plaintiffs' express election to keep those matters private, FCA allegedly enabled third-party tracking technology to continue to collect Plaintiffs' personally identifiable information, including website interactions and shopping behaviors on FCA's websites, which could then be consolidated into extensive online profiles about each individual that FCA and the third parties could leverage for advertising. (*Id.* ¶¶ 69–75, 93–94.) This is sufficient to plead standing based on alleged harm like intrusion upon seclusion or unjust enrichment. *See, e.g.*, *In re Meta Android Priv. Litig.*, 833 F. Supp. 3d 1010, 1022–23 (N.D. Cal. 2026) (collecting cases).

[2] FCA raises only a facial challenge to Plaintiffs' standing, so the Court "must accept as true all material allegations in the complaint, and must construe the complaint in" Plaintiffs' favor. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

***Privacy Claims (Counts I–II)***. Plaintiffs have plausibly alleged a "highly offensive" intrusion into matters that they reasonably expected to be "private," sufficient to state invasion of privacy and intrusion upon seclusion claims for the same reasons they have pled Article III standing. *Id.* at 1025–26. FCA argues that the Complaint lacks allegations that FCA's own conduct was "knowing and intentional" such that it was plausibly highly offensive. However, FCA is alleged to have designed its websites to include third-party tracking capabilities. (Compl. ¶ 42.) And, as alleged, FCA implicitly acknowledges that it knows the ultimate destination and use of the data collected by each third-party cookie, inasmuch as it claims that it can identify and turn off Targeting and Social Media cookies at a user's request. Finally, FCA is alleged to make use of the data collected by the third parties for its own advertising purposes. Taken together, these allegations are sufficient to plausibly plead that FCA acted knowingly and intentionally when it allowed third parties to continue to track and build profiles of website visitors after those visitors had opted out of all non-essential cookies.[3]

***CIPA Claims (Counts III–IV)***. Plaintiffs have plausibly pled a Section 631(a) wiretapping claim under an aiding and abetting theory. *See Asercion v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 26-cv-02442-RFL, 2026 WL 2453175, at *1–2 (N.D. Cal. Aug. 21, 2026). Knowledge and intent are sufficiently alleged for the reasons already stated. *Id.* at *2. Likewise, the Section 638.51(a) pen register claim is plausibly pled. *Id.*; *Ward v. Mochi Health Corp.*, No. 26-cv-01393-RFL, 2026 WL 2584947, at *3 (N.D. Cal. Sept. 1, 2026). The Complaint plausibly alleges that third parties receive IP addresses and other routing/addressing metadata, which they use "in real time to identify and log the origin and destination endpoints" of Plaintiffs' communications. (Compl. ¶¶ 90–91.) Therefore, Plaintiffs plausibly plead the "Third Parties'

---

[3] The privacy claims are not generally subject to the heightened pleading standard of Rule 9(b). *Dawson v. Meta Platforms, Inc.*, 2026 WL 2137134, *4–5 (N.D. Cal. July 23, 2026). Therefore, FCA's statements on its website are considered under the plausibility standard to the extent they go to FCA's knowledge of the end-use of the data collected by third-party trackers. However, to the extent Plaintiffs also premise their privacy claims on a misrepresentation theory, those allegations concerning misrepresentations are subject to Rule 9(b) and are dismissed, with leave to amend, for the reasons explained below in the Fraud Claim Section. *Id.*

receiving infrastructure" records at least some collected metadata that is used to route Plaintiffs' communications. *See In re Meta Android Priv. Litig.*, 833 F. Supp. 3d at 1027–28. Furthermore, while FCA argues that the collection of signaling information and contents occur through the same "process," precluding application of Section 638.51(a), plaintiffs plausibly allege that the processes are "separate." (Compl. ¶¶ 90–91.) A single device (i.e., one cookie) may have a process to gather content and another to gather signaling information. *See Asercion*, 2026 WL 2453175, at *2.

***Fraud Claim (Count V)***. Plaintiffs' fraud claim is dismissed, with leave to amend, for lack of specificity as required under Rule 9(b). *See Ortiz v. Deckers Outdoor Corp.*, No. 25-cv-09631-RFL, 2026 WL 1243675, at *2 (N.D. Cal. May 6, 2026). Plaintiffs have pled with particularity that FCA's representation on its website that visitors could "opt out of all third-party cookies on our Site, other than those that are 'necessary'" was false. Plaintiffs have also adequately pled that they were damaged as a result of the false statements, for the reasons already discussed. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018). Moreover, Plaintiffs have plausibly pled that FCA knew the statements were false when it posted them on its websites, for the reasons discussed above.[4] However, the Complaint lacks particularized allegations of when the individual Plaintiffs visited the website and encountered the alleged misrepresentations, requiring dismissal of the claim with leave to amend. *See Ortiz*, 2026 WL 1243675, at *2.

***Unjust Enrichment Claim (Count VI)***. FCA's only challenge to Count VI is that the Complaint fails to plausibly allege that Plaintiffs have no adequate legal remedy such that they may pursue their unjust enrichment claim. (Motion at 21[5] (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020)).) The Complaint alleges that "at scale," FCA turned a

---

[4] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To the extent that the undersigned's order in *Ortiz* could be read to suggest that the "particularity" pleading requirement applies to allegations of scienter, that is not what was intended and would be an incorrect statement of the law. 2026 WL 1243675, at *2.

[5] Citations to page numbers refer to ECF pagination.

profit on the data it wrongfully acquired from Plaintiffs, and that it would be unjust for FCA to retain those profits. (Compl. ¶¶ 93–94, 206, 210.) The Complaint further alleges that Plaintiffs have "no adequate legal remedy" to recover the wrongfully earned profits. (*Id.* ¶ 213.) At the pleading stage, and in the absence of any specific argument from FCA as to how Plaintiffs could seek disgorgement of such profits as a legal remedy, Plaintiffs allegations are sufficient. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1051 (N.D. Cal. 2025).

***Conclusion***. For the reasons explained above, the Motion to Dismiss is **GRANTED IN PART** as to Count V, and as to Counts I and II only to the extent they are premised on a misrepresentation theory, and **DENIED** in all other respects. Since the Court cannot conclude that amendment would be futile, dismissal is with leave to amend. If Plaintiffs wish to file an amended complaint correcting the deficiencies identified above, they shall do so by **October 13, 2026**. The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. The deadline to respond to the amended complaint (if one is filed) or to answer the existing complaint (if no amended complaint is filed) shall be **November 2, 2026**.

**IT IS SO ORDERED.**

Dated: September 22, 2026

RITA F. LIN
United States District Judge